STATE OF CONNECTICUT *v.* EDWARD ANDREWS
(SC 16126)

McDonald, C. J., and Norcott, Katz, Palmer and Sullivan, Js.

Argued March 16—officially released June 20, 2000

*Richard E. Condon, Jr.*, special deputy assistant public defender, for the appellant (defendant).

*Robert M. Spector*, deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Michael A. Pepper*, assistant state's attorney, for the appellee (state).

*Opinion*

SULLIVAN, J. The defendant, Edward Andrews, pleaded guilty to murder in violation of General Statutes § 53a-54a (a)[1] in connection with a homicide that he allegedly committed on July 28, 1994. The Appellate Court affirmed the judgment of guilty rendered by the trial court, which had denied the defendant's motion to withdraw his plea, and this court granted his petition for certification to appeal limited to the following issue: "Whether the Appellate Court properly concluded that the defendant knowingly had entered a guilty plea to murder where the trial court failed to inform him, pursuant to General Statutes § 54-125a (b) (1),[2] that he would

---

[1] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

[2] General Statutes § 54-125a provides: "(a) A person convicted of one or more crimes who is incarcerated on or after October 1, 1990, who received a definite sentence or aggregate sentence of more than two years, and who has been confined under such sentence or sentences for not less than one-half of the aggregate sentence or one-half of the most recent sentence imposed by the court, whichever is greater, may be allowed to go at large on parole in the discretion of the panel of the Board of Parole for the institution in which the person is confined, if (1) it appears from all available information, including any reports from the Commissioner of Correction that the panel may require, that there is reasonable probability that such inmate will live and remain at liberty without violating the law, and (2) such

## be statutorily ineligible for parole as a consequence of

release is not incompatible with the welfare of society. At the discretion of the panel, and under the terms and conditions as may be prescribed by the panel including requiring the parolee to submit personal reports, the parolee shall be allowed to return to his home or to reside in a residential community center, or to go elsewhere. The parolee shall, while on parole, remain in the legal custody and control of the board until the expiration of the maximum term or terms for which he was sentenced. Any parolee released on the condition that he reside in a residential community center may be required to contribute to the cost incidental to such residence. Each order of parole shall fix the limits of the parolee's residence, which may be changed in the discretion of such panel. Within three weeks after the commitment of each person sentenced to more than one year, the state's attorney for the judicial district shall send to the Board of Parole the record, if any, of such person.

"(b) (1) No person convicted of any of the following offenses, which was committed on or after July 1, 1981, shall be eligible for parole under subsection (a) of this section: Capital felony, as defined in section 53a-54b, felony murder, as defined in section 53a-54c, arson murder, as defined in section 53a-54d, murder, as defined in section 53a-54a, or any offense committed with a firearm, as defined in section 53a-3, in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school. (2) A person convicted of an offense, other than an offense specified in subdivision (1) of this subsection, where the underlying facts and circumstances of the offense involve the use, attempted use or threatened use of physical force against another person shall be ineligible for parole under subsection (a) of this section until such person has served not less than eighty-five per cent of the definite sentence imposed. (3) No person convicted of any other offense for which there is a mandatory minimum sentence which may not be suspended or reduced by the court shall be eligible for parole under subsection (a) of this section until such person has served such mandatory minimum sentence or fifty per cent of the definite sentence imposed, whichever is greater.

"(c) The Board of Parole shall, not later than July 1, 1996, adopt regulations in accordance with chapter 54 to ensure that a person convicted of an offense described in subdivision (2) of subsection (b) of this section is not released on parole until such person has served eighty-five per cent of the definite sentence imposed by the court. Such regulations shall include guidelines and procedures for classifying a person as a violent offender that are not limited to a consideration of the elements of the offense or offenses for which such person was convicted."

Although, after the date of the crime in question, subsection (b) of § 54-125a was amended by Public Acts 1994, No.94-37, § 2, and Public Acts 1995, No. 95-255, § 1, neither of those amendments is relevant to this appeal. For convenience we refer throughout this opinion to the current version of § 54-125a.

pleading guilty." *State* v. *Andrews*, 249 Conn. 922, 733 A.2d 234 (1999). The defendant claims that statutory ineligibility for parole is a direct consequence of a guilty plea, and, therefore, that the trial court was required to inform him of that fact during the plea canvass in order for his waiver of his constitutional rights, which is implicit in a guilty plea, to be knowing and voluntary. The state argues that statutory ineligibility for parole is a consequence collateral to a guilty plea, and, therefore, that the trial court had no such duty. We agree with the state and, accordingly, affirm the judgment of the Appellate Court.

The facts and procedural history of this case as set forth in the opinion of the Appellate Court are as follows: "Originally, the defendant pleaded not guilty to the murder charge and to two additional charges involving his possession and use of a firearm. After a jury had been selected, the trial began on September 4, 1996. The trial court denied the defendant's motion to suppress the testimony of an eyewitness who identified the defendant as the person who had shot the victim.

"On the following day, the defendant agreed to plead guilty to the murder charge and the state agreed not to prosecute the other two charges. Before accepting the guilty plea, the trial court canvassed the defendant in accordance with the requirements of Practice Book §§ 711 through 713, now §§ 39-19 through 39-21. The defendant's responses to the court's inquiries disclosed that he was thirty years of age and a high school graduate who had attended college for one year. He had discussed the murder charge and the evidence against him with his attorney and was satisfied with his attorney's services. He was not under the influence of alcohol, drugs or any medication and he understood that murder was a class A felony that carried a maximum sentence of sixty years and a minimum sentence of twenty-five years with a maximum fine of $20,000. Dur-

ing the canvass, the defendant said that he realized he was waiving various constitutional rights related to a criminal trial by pleading guilty, but, nevertheless, was pleading guilty voluntarily without any force or threats by other persons.

"The court informed the defendant that, after discussing the case with the prosecutor and defense counsel, it was prepared to impose a sentence of thirty-three years for the crime that the defendant had committed. The court asked the defendant whether he wanted to plead guilty to murder when the sentence indicated was thirty-three years. The defendant answered yes. The court then proceeded to accept the guilty plea.

"On December 3, 1996, before the sentencing proceeding, the defendant filed a written motion to withdraw his guilty plea, alleging that the plea was made unknowingly and involuntarily. Previously, in a brief letter received by the clerk's office on October 18, 1996, the defendant had claimed that the trial court did not canvass him properly on an unspecified critical element of his case.

"On January 9, 1997, there was an evidentiary hearing on the motion to withdraw the guilty plea. The only witness presented was the defendant, who testified that he did not understand the consequences of his plea when the trial court questioned him during the plea acceptance proceeding. He claimed that he was then under the impression that he would have to serve only eight to fifteen years of his thirty-three year sentence.[3] He also testified that his plea was not voluntary because

---

[3] "The defendant testified: 'Well, it's like in New York, thirty-three years—it would be like eight to fifteen years. And now I got the internal memo and they said I got to do like twenty-seven years flat.' The record, briefs and transcript fail to disclose the basis for the defendant's statement concerning the duration of imprisonment resulting from a thirty-three year sentence under New York law." *State* v. *Andrews*, 53 Conn. App. 90, 93 n.3, 729 A.2d 232 (1999).

his trial attorney had pressured him into pleading guilty.[4] After listening to the arguments of the state's attorney and the defendant's new counsel, the court reviewed the transcript of the plea canvass and denied the motion to withdraw the defendant's guilty plea. The court then sentenced the defendant to thirty-three years imprisonment as agreed at the time that his guilty plea was accepted.

"On appeal [to the Appellate Court and in the certified appeal to this court], the defendant claims that the trial court should have permitted him to withdraw his plea in accordance with Practice Book § 721 (2)[5] because of his mistaken belief that the thirty-three year sentence would result in only eight to fifteen years of actual imprisonment. He maintains that the court should have informed him that he would not be eligible for parole because § 54-125a (b) (1) provides that persons convicted of murder as defined in § 53a-54a are ineligible for parole." *State* v. *Andrews*, 53 Conn. App. 90, 91–94, 729 A.2d 232 (1999). The Appellate Court concluded that the trial court has no duty to advise a defendant of his statutory parole ineligibility during a plea canvass and, accordingly, affirmed the judgment of the trial court. Id., 97–98. We agree.

We first address the law governing guilty pleas. "It is axiomatic that unless a plea of guilty is made know-

---

[4] "On appeal, the defendant has not briefed this claim of being pressured by his trial attorney to plead guilty. Accordingly, we must treat that claim in this appeal as abandoned. *Mather* v. *Griffin Hospital*, 207 Conn. 125, 129 n.2, 540 A.2d 666 (1988); *State* v. *Cavallo*, 200 Conn. 664, 666 n.3, 513 A.2d 646 (1986)." *State* v. *Andrews*, 53 Conn. App. 90, 93 n.4, 729 A.2d 232 (1999).

[5] "Practice Book § 721 (2), now § 39-27, provides in relevant part: 'The grounds for allowing the defendant to withdraw his or her plea of guilty after acceptance are as follows . . . .

"(2) The plea was involuntary, or it was entered without knowledge of the charge or without knowledge that sentence actually imposed could be imposed. . . .' " *State* v. *Andrews*, 53 Conn. App. 90, 93 n.5, 729 A.2d 232 (1999).

ingly and voluntarily, it has been obtained in violation of due process and is therefore voidable. *McCarthy* v. *United States,* 394 U.S. 459, 466, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969); *State* v. *Godek,* [182 Conn. 353, 356, 438 A.2d 114 (1980), cert. denied, 450 U.S. 1031, 101 S. Ct. 1741, 68 L. Ed. 2d 226 (1981)]; *State* v. *Marra,* 174 Conn. 338, 340, 387 A.2d 550 (1978); *State* v. *Battle,* 170 Conn. 469, 473, 365 A.2d 1100 (1976). A plea of guilty is, in effect, a conviction, the equivalent of a guilty verdict by a jury. *Boykin* v. *Alabama,* 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); *State* v. *Marra,* supra, 345; *State* v. *Battle,* supra, 473. In choosing to plead guilty, the defendant is waiving several constitutional rights, including his privilege against self-incrimination, his right to trial by jury, and his right to confront his accusers. *McCarthy* v. *United States,* supra, 466. These considerations demand the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and its consequences. *Boykin* v. *Alabama,* supra, 243–44. We therefore require the record affirmatively to disclose that the defendant's choice was made intelligently and voluntarily. [Id.], 242; *State* v. *Godek,* supra, 356; *Blue* v. *Robinson,* 173 Conn. 360, 373, 377 A.2d 1108 (1977)." *State* v. *Childree,* 189 Conn. 114, 119–20, 454 A.2d 1274 (1983).

"[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." (Internal quotation marks omitted.) *Brady* v. *United States,* 397 U.S. 742, 755, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970).

"The *Boykin* constitutional essentials for the acceptance of a plea of guilty are included in our rules and are reflected in Practice Book §§ [39-19 and 39-20]."[6] *State* v. *Collins*, 207 Conn. 590, 596, 542 A.2d 1131 (1988). Those rules provide that the trial court must not accept a guilty plea without first addressing the defendant personally in open court and determining that the defendant fully understands the items enumerated in § 39-19, and that the plea is made voluntarily pursuant to § 39-20. "There is no requirement, however, that the defendant be advised of every possible consequence of such a plea." *State* v. *Gilnite*, 202 Conn. 369, 383, 521 A.2d 547 (1987). "Although a defendant must be aware of the direct consequences of a plea, the scope of 'direct consequences' is very narrow. J. Bond, Plea

[6] For convenience, we refer in this opinion to the current numbers of Practice Book sections, rather than those in use at the time in issue. Practice Book § 39-19 provides: "—Acceptance of Plea; Advice to Defendant

"The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he or she fully understands:

"(1) The nature of the charge to which the plea is offered;

"(2) The mandatory minimum sentence, if any;

"(3) The fact that the statute for the particular offense does not permit the sentence to be suspended;

"(4) The maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sentences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction; and

"(5) The fact that he or she has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he or she has the right to be tried by a jury or a judge and that at that trial the defendant has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him or her, and the right not to be compelled to incriminate himself or herself."

Practice Book § 39-20 provides: "—Ensuring That the Plea is Voluntary

"The judicial authority shall not accept a plea of guilty or nolo contendere without first determining, by addressing the defendant personally in open court, that the plea is voluntary and is not the result of force or threats or of promises apart from a plea agreement. The judicial authority shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the prosecuting authority and the defendant or his or her counsel."

Bargaining and the Guilty Plea (2d Ed.) § 3.38. In Connecticut, the direct consequences of a defendant's plea include only the mandatory minimum and maximum possible sentences; Practice Book § [39-19 (2) and (4)]; the maximum possible consecutive sentence; Practice Book § [39-19 (4)]; the possibility of additional punishment imposed because of previous conviction(s); Practice Book § [39-19 (4)]; and the fact that the particular offense does not permit a sentence to be suspended. Practice Book § [39-19 (3)]; cf. J. Bond, supra [§ 3.38]. The failure to inform a defendant as to all possible indirect and collateral consequences does not render a plea unintelligent or involuntary in a constitutional sense." *State* v. *Gilnite*, supra, 383 n.17.

"Practice Book § [39-27] specifies circumstances under which a defendant may withdraw a guilty plea after it has been entered.[7] '[O]nce entered, a guilty plea cannot be withdrawn except by leave of the court, within its sound discretion, and a denial thereof is reversible only if it appears that there has been an abuse of discretion.' *Szarwak* v. *Warden*, 167 Conn. 10, 23, 355 A.2d 49 (1974). 'The burden is always on the defen-

[7] Practice Book § 39-27 provides: "—Grounds for Allowing Plea Withdrawal

"The grounds for allowing the defendant to withdraw his or her plea of guilty after acceptance are as follows:

"(1) The plea was accepted without substantial compliance with Section 39-19;

"(2) The plea was involuntary, or it was entered without knowledge of the nature of the charge or without knowledge that the sentence actually imposed could be imposed;

"(3) The sentence exceeds that specified in a plea agreement which had been previously accepted, or in a plea agreement on which the judicial authority had deferred its decision to accept or reject the agreement at the time the plea of guilty was entered;

"(4) The plea resulted from the denial of effective assistance of counsel;

"(5) There was no factual basis for the plea; or

"(6) The plea either was not entered by a person authorized to act for a corporate defendant or was not subsequently ratified by a corporate defendant."

dant to show a plausible reason for the withdrawal of a plea of guilty.' *State* v. *Slater*, 169 Conn. 38, 46, 362 A.2d 499 (1975)." *State* v. *Crenshaw*, 210 Conn. 304, 308–309, 554 A.2d 1074 (1989).

The defendant, relying on *Cuthrell* v. *Director, Patuxent Institution*, 475 F.2d 1364 (4th Cir.), cert. denied, 414 U.S. 1005, 94 S. Ct. 362, 38 L. Ed. 2d 241 (1973), in which the United States Court of Appeals for the Fourth Circuit characterized direct consequences as having a "definite, immediate and largely automatic effect on the range of the defendant's punishment"; id., 1366; claims that statutory parole ineligibility is a direct consequence of a guilty plea, and that the trial court was therefore obligated to advise him at the plea canvass that he would be ineligible for parole. The defendant further argues that this court should apply a *Cuthrell*-type analysis instead of applying *State* v. *Gilnite*, supra, 202 Conn. 369, in which this court determined that the only direct consequences of a guilty plea are those enumerated in Practice Book § 39-19. Id., 383 n.17.

In support of his argument, the defendant claims that Connecticut courts have applied a *Cuthrell*-type standard in a number of post-*Gilnite* cases. Specifically, the defendant cites *State* v. *Smith*, 207 Conn. 152, 160–61, 540 A.2d 679 (1988) (discussing whether removal of revocation of probation from defendant's criminal record is direct or collateral consequence for purposes of determining mootness of appeal); *Johnson* v. *Commissioner of Correction*, 36 Conn. App. 695, 707, 652 A.2d 1050, cert. denied, 233 Conn. 912, 659 A.2d 183 (1995) (recognizing that " '[d]irect consequences have definite, immediate and largely automatic effects' " on range of punishment, and holding that sentence credits do not meet criteria); *Falby* v. *Commissioner of Correction*, 32 Conn. App. 438, 444–45, 629 A.2d 1154, cert. denied, 227 Conn. 927, 632 A.2d 703 (1993) (recognizing that "[d]irect consequences have definite, immediate

and largely automatic effects" on range of punishment, and holding that misinformation regarding form of parole hearing does not meet criteria); and *Sherbo* v. *Manson*, 21 Conn. App. 172, 182 n.7, 572 A.2d 378, cert. denied, 215 Conn. 808, 809, 576 A.2d 539, 540 (1990) (applying *Cuthrell* test, and holding that procedure for commitment to Whiting Forensic Institute does not meet criteria). Those cases, however, do not support the defendant's argument that Connecticut courts have used a *Cuthrell*-type analysis to expand the universe of direct consequences of a guilty plea beyond those enumerated in Practice Book § 39-19. Although the cases discuss the distinction between direct and collateral consequences, rather than directly applying a strict *Gilnite* analysis, none of them holds that there are direct consequences to a guilty plea other than those enumerated in § 39-19. Indeed, in *Falby* v. *Commissioner of Correction*, supra, 445, the Appellate Court, citing *Sherbo* v. *Manson*, supra, 181, recognized that "Practice Book § [39-19] *defines* the direct consequences" for purposes of determining the validity of a guilty plea. (Emphasis added.)

We conclude that *Gilnite* is not inconsistent with a *Cuthrell*-type analysis. Rather, *Gilnite* stands for the proposition that Practice Book § 39-19 defines the scope of the *Boykin* constitutional mandate that a defendant be advised of all direct consequences of his plea, while the *Cuthrell* standard simply enumerates several characteristics of those direct consequences. Thus, contrary to the defendant's claim, our case law clearly and consistently has limited the direct consequences of a guilty plea to those consequences enumerated in Practice Book § 39-19.[8]

---

[8] We do not hold, as a matter of law, that there can never be direct consequences to a guilty plea, i.e., consequences covered by the *Boykin* constitutional mandate, beyond those listed in Practice Book § 39-19. Rather, we conclude that neither this court nor the Appellate Court has identified any such consequences to date. We recognize, however, that the trial courts are free to give advice at a plea canvass beyond the items enumerated in

The defendant argues, however, that, even if we have not held previously that there are direct consequences beyond those enumerated in Practice Book § 39-19, our case law implicitly requires statutory parole ineligibility to be treated as a direct consequence of a guilty plea. Specifically, the defendant relies on *State* v. *Collins*, 176 Conn. 7, 404 A.2d 871 (1978) (*Collins I*), and *State* v. *Collins*, supra, 207 Conn. 590 (*Collins II*). In *Collins I*, the defendant was not informed until his sentencing that the sentence for the offenses to which he pleaded guilty would run consecutively to other sentences that he was serving. When the defendant learned that the sentences would be consecutive, he attempted to withdraw his plea. The trial court refused to allow the withdrawal. This court found that "the length of time a defendant may have to spend in prison is clearly crucial to a decision of whether or not to plead guilty." Id., 9–10. Because the defendant could not have known that the sentences were to run consecutively, we found that the plea had not been made intelligently. Therefore, we held that trial court's refusal to allow withdrawal of the plea was a denial of due process. Id., 10.

The defendant argues that, under *Collins I*, the trial court is required to inform the defendant of *any* consequences of a guilty plea that affect the time he will have to spend in prison. We disagree. We conclude, rather, that *Collins I* simply discusses the need for a plea to be knowing and voluntary, which is the rationale underlying the requirement of Practice Book § 39-19 (4) that the court ensure that the defendant understands "the maximum sentence possible from *consecutive senten-*

Practice Book § 39-19; see Proposed Amendments to Criminal Rules, Advisory Committee Note, 52 F.R.D. 409, 421–22 (1971) (judge is free to inform defendant of collateral matter at plea canvass if he feels matter is likely to be of real significance); and that the legislature may require trial courts to give information beyond the information required by due process. See, e.g., General Statutes § 54-1j (requiring trial courts to advise defendants of certain immigration consequences of guilty plea).

*ces* and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction . . . ."[9] (Emphasis added.) Therefore, *Collins I* does not stand for the proposition that the trial court must advise the defendant of any consequence to a plea that may increase the actual time he will spend in prison.[10]

In *Collins II*, supra, 207 Conn. 590, the defendant claimed that his attorney incorrectly had informed him about the period of actual incarceration that would result from the maximum sentence imposed on him. Id., 598. This court held that the claim raised "legitimate concerns that the defendant did not fully understand the consequences of his guilty pleas"; id., 598–99; and we remanded the case for a factual hearing on the issue of whether the defendant would have entered the guilty pleas had he been accurately informed. Id., 599. We conclude that there is a material difference between a defendant's being misinformed, as was the case in *Collins II*, and his making unfounded assumptions, as the defendant did in this case. "The requirement that a plea be intelligently and voluntarily made does not impose upon the trial judge a duty to discover and dispel any unexpressed misapprehensions that may be harbored by a defendant." (Internal quotation marks omitted.) *Armstrong* v. *Egeler*, 563 F.2d 796, 800 (6th Cir. 1977). Accordingly, we conclude that neither *Collins I* nor *Collins II* supports the defendant's claim that the trial court has a duty to advise a defendant that his conviction will make him ineligible for parole.

[9] We note that the applicable Practice Book section at the time that the defendant in *Collins I* entered his plea was identical to the current Practice Book § 39-19. See Practice Book (1976) § 2122 (4).

[10] Indeed, this court previously has indicated that there is no such categorical requirement. In *Mainiero* v. *Liburdi*, 214 Conn. 717, 725, 573 A.2d 1207 (1990), we held that the trial court has no duty under *Boykin* to inform a defendant at a plea canvass that he will be ineligible for sentence modification or intensive probation.

The defendant also argues that, in this case, the Appellate Court should not have relied on federal precedent holding that parole eligibility is not a direct consequence of a guilty plea. See *State* v. *Andrews*, supra, 53 Conn. App. 95, citing *Hill* v. *Lockhart*, 474 U.S. 52, 56, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (recognizing that United States Supreme Court has never held that federal constitution requires state to furnish defendant with information about parole eligibility); *United States* v. *Posner*, 865 F.2d 654, 660 (5th Cir. 1989) (trial court need not advise defendant that he was ineligible for parole); *Hunter* v. *Fogg*, 616 F.2d 55, 61 (2d Cir. 1980) (federal constitution does not require state court to inform defendant of minimum portion of sentence he may be required to serve); *Armstrong* v. *Egeler*, supra, 563 F.2d 801 (federal constitution does not require state court to advise defendant that he will be ineligible for parole). The defendant argues that the rulings in *Armstrong* and *Posner* fail to recognize that statutory ineligibility for parole should not be treated the same way as parole eligibility for *Boykin* purposes, because the rationale for characterizing parole eligibility as a collateral consequence is that parole decisions are within the discretion of the parole board and are exceedingly complex. Therefore, it would be infeasible and undesirable for the trial court to attempt to advise a defendant of the rules governing parole decisions at a plea canvass. See Proposed Amendments to Criminal Rules, Advisory Committee Note, 52 F.R.D. 409, 422 (1971) (stating that "certain consequences of a plea of guilty, such as parole eligibility, may be so complicated that it is not feasible to expect a judge to clearly advise the defendant"). Because statutory parole ineligibility is nondiscretionary and automatic, the defendant argues, that rationale is inapplicable in this case. The defendant further argues that the majority of federal circuit courts of appeal that have considered the issue have ruled that

statutory parole ineligibility is a direct consequence of a guilty plea, and he urges this court to follow those cases. See *Bye* v. *United States*, 435 F.2d 177, 179 (2d Cir. 1970), and cases cited therein. We are not persuaded.

In *Bye* v. *United States*, supra, 435 F.2d 177, the United States Court of Appeals for the Second Circuit held that, under rule 11 of the Federal Rules of Criminal Procedure, as amended effective July 1, 1966, the trial court must advise a defendant of his ineligibility for parole. The applicable version of rule 11 provided that the court shall not accept a guilty plea " 'without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea.' " *Bye* v. *United States*, supra, 179. Rule 11 was amended in 1975 to clarify "that a defendant need be informed of only two sentencing consequences: 'the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law.' " *Hunter* v. *Fogg*, supra, 616 F.2d 60. The advisory committee notes to the proposed amendment specifically provide that the amended rule would not require the trial court to inform the defendant of either his eligibility or his ineligibility for parole. Proposed Amendments to Criminal Rules, Advisory Committee Note, supra, 52 F.R.D. 421–22; see also 3 A.B.A., Standards for Criminal Justice (2d Ed. 1980) c. 14, standard 14-1.4 (a) (ii) n.14, p.14-24 ("[p]resently, Fed. R. Crim. P. 11 (c) does not require that prior to entry of a guilty plea the defendant be advised that the sentence may make the defendant ineligible for parole"). Accordingly, the court in *Hunter* v. *Fogg*, supra, 61, held that, under the amended rule, the trial court was *not* required to advise the defendant of the minimum portion of the sentence that he actually would be required to serve.

We therefore agree with the Appellate Court that *Hunter* v. *Fogg*, supra, 616 F.2d 55, effectively overruled *Bye*; see *State* v. *Andrews*, supra, 53 Conn. App. 95 n.7; and conclude that the *Bye* line of cases relied on by the defendant was superseded by the 1975 amendment to rule 11. It is therefore clear that those cases were decided on the basis of the language of rule 11, not on the requirements of the constitution. See *Hunter* v. *Fogg*, supra, 60–61; *Armstrong* v. *Egeler*, supra, 563 F.2d 800 (recognizing that rule 11 may require trial court to advise defendant of parole ineligibility, but noting that federal rule does not apply to states). Therefore, those cases are of limited persuasive value in this case.

Moreover, a number of federal courts of appeal ruled that, even before the 1975 amendment, rule 11, and, by implication, the constitution, did not require the trial court to advise a defendant of parole ineligibility. See *Trujillo* v. *United States*, 377 F.2d 266 (5th Cir.), cert. denied, 389 U.S. 899, 88 S. Ct. 224, 19 L. Ed. 2d 221 (1967); *Smith* v. *United States*, 324 F.2d 436 (D.C. Cir. 1963). The reasoning of those courts was "that eligibility for parole is not a 'consequence' of a plea of guilty, but a matter of legislative grace. It is equally true that non-eligibility for parole is not a 'consequence' of a plea of guilty . . . rather, it is a consequence of the withholding of legislative grace." *Smith* v. *United States*, supra, 441; see also *Trujillo* v. *United States*, supra, 269. This conclusion is consistent with our conclusion that, under both a *Cuthrell*-type analysis and under *State* v. *Gilnite*, supra, 202 Conn. 369, statutory parole ineligibility is not a direct consequence of a guilty plea.

Accordingly, we conclude that due process does not require a trial court to advise the defendant of his statutory parole ineligibility during a plea canvass. We recognize, as the defendant points out, that statutory parole ineligibility affects the amount of time that the defendant actually will spend in prison, and, unlike parole

eligibility, is neither complex nor dependent on the discretion of the parole board. It does not follow, however, that statutory parole ineligibility is covered by the *Boykin* constitutional mandate. "[Nowhere] in *Boykin* does it appear that a precise knowledge of all of the penal ramifications [of a guilty plea] rises to the quality of a constitutional requirement." *Armstrong* v. *Egeler*, supra, 563 F.2d 799.

The trial court advised the defendant at his plea canvass of the sentence that it intended to impose. The record does not indicate that either the trial court or the defendant's attorney suggested to the defendant that he would be eligible for parole. Rather, the defendant simply assumed that he would be eligible. The trial court has no constitutional obligation to discover and dispel such unfounded assumptions. See id., 800. Our cases have not identified any direct consequences of a guilty plea beyond those identified in Practice Book § 39-19. Furthermore, we are persuaded by the federal cases holding that statutory parole ineligibility is not a direct consequence of a guilty plea, but is, rather, "a consequence of the withholding of legislative grace." *Smith* v. *United States*, supra, 324 F.2d 441; see also *Trujillo* v. *United States*, supra, 377 F.2d 269. Accordingly, we conclude that the defendant's guilty plea was voluntary and intelligent in a constitutional sense.

The defendant finally argues that, even if such advice is not constitutionally required, this court should invoke its supervisory authority to direct the trial courts to advise defendants of their statutory parole ineligibility. Because we are persuaded by the reasoning of the federal cases holding that trial courts need not advise defendants of their ineligibility for parole, we decline to engage in such an extraordinary exercise of our authority.

We conclude that neither constitutional due process nor Connecticut's rules of criminal procedure requires

a trial court to advise a defendant of his statutory parole ineligibility at a plea canvass.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.