[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On or about July 26, 1993, the petitioner pleaded nolo contendere in docket number CR92-76424 to one count of murder in violation of General Statutes § 53a-54a (a). The plea was entered as a result of a plea agreement and resulted in the petitioner on September 17, 1993 receiving a sentence of twenty-five years in accordance with the plea agreement. The petitioner filed a pro se petition seeking habeas corpus relief on October 5, 1995, which was amended on July 6, 1999. In his Amended Petition, "[t]he petitioner claims his conviction and incarceration are CT Page 6922 illegal in that they were obtained in violation of his state and federal constitutional rights to the effective assistance of counsel and due process under article first, § 8 of the constitution of Connecticut and the fifth, sixth and fourteenth amendments to the United States constitution in that: [trial counsel] advised [the petitioner] that if he accepted the plea offer of twenty-five years, [he] would be eligible for parole after serving twelve and one-half years[.]" Am. Pet., at 1-2.
The petitioner alleges that his plea was rendered involuntary because of trial counsel's faulty advice, and that but for the faulty advice, the petitioner would not have entered the plea. Id., at 2. "Said failure by [trial counsel] fell below the range of competence displayed by lawyers with ordinary training and skill in the criminal law; and there is a reasonable probability that but for [trial counsel's] failure, [the petitioner] would not have entered pleas, and would have gone to trial."Id. The petitioner also indicates that he "has not deliberately bypassed a direct appeal of this claim because the Connecticut Supreme Court inState v. Leecan, 198 Conn. 517 (1986) has ruled that claims of ineffective assistance of counsel cannot be litigated on direct appeal and should only be raised by a petition for writ of habeas corpus." Id.
The respondent has raised a special defense that the "[p]etitioner did not seek to withdraw his pleas prior to sentencing," and that "[t]o the extent the petitioner is alleging anything other than ineffective assistance of counsel, the Respondent/Warden claims that the petitioner's procedural default prevents the petitioner from raising this allegation now in the absence of a showing of cause and prejudice." Ret., at 2.
"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of the conviction has two components. First, the petitioner must show that counsel's performance was deficient. Second, the petitioner must show that the deficient performance prejudiced the defense. Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. Stricklandv. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674, reh. denied, 467 U.S. 1267, 104 S.Ct. 3562. 82 L.Ed.2d 864 (1984); Aillon v.Meachum, 211 Conn. 352, 357, 559 A.2d 206 (1989); Fair v. Warden,211 Conn. 398, 402, 559 A.2d 1094, cert. denied, 493 U.S. 981,110 S.Ct. 512, 107 L.Ed.2d 514 (1989)." Henry v. Commissioner of Correction,60 Conn. App. 313, 316-7, 759 A.2d 118 (2000). "Even if a petitioner shows that counsel's performance was deficient, the second prong, or prejudice prong, requires that the petitioner show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the CT Page 6923 outcome." (Internal citations and quotations omitted.) Id., 317-8. Seealso Commissioner of Correction v. Rodriguez, 222 Conn. 469, 477,610 A.2d 631 (1992).
"Although Strickland applies generally to the evaluation of whether ineffective assistance of counsel during criminal proceedings has infringed on a petitioner's constitutional rights, the United States Supreme Court has articulated a modified prejudice standard for cases in which the conviction has resulted from a guilty plea.[1] See Hill v.Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Hill
requires the petitioner to demonstrate that he would not have pleaded guilty, that he would have insisted on going to trial, and that the evidence that had been undiscovered or the defenses he claims should have been introduced were likely to have been successful at trial." Copas v.Commissioner, 234 Conn. 139, 151, 662 A.2d 718 (1995).
"The Hill court also stated that the petitioner must show that such a decision to plead not guilty would have been based on the likelihood that the introduction of the evidence or the defense that was not identified because of ineffective assistance of counsel would have been successful at trial. The court stated that in many guilty plea cases, the prejudice inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate the determination whether the error prejudiced the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the prejudice inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." (Internal citations and quotations omitted.) Id., 156-7.
"A reviewing court can find against the petitioner on whichever [Strickland prong] is easier. Valeriano v. Bronson, 209 Conn. 75, 85-6,546 A.2d 1380 (1988); Nardini v. Manson, 207 Conn. 118, 124, 540 A.2d 69
(1988); Magnotti v. Meachum, 22 Conn. App. 669, 674, 579 A.2d 553
(1990); Beasley v. Commissioner of Correction, [47 Conn. App. 253, 264,704 A.2d 807 (1997), cert. denied, 243 Conn. 967, 707 A.2d 1268 (1998)]."Petaway v. Commissioner of Correction, 49 Conn. App. 75, 76 n. 2,712 A.2d 992 (1998). "A court deciding an ineffective assistance of counsel claim need not address the question of counsel's performance, if it is easier to dispose of the claim on the ground of insufficient CT Page 6924 prejudice." Nardini v. Manson, supra, 207 Conn. 124.
The respondent has raised the special defense that the petitioner did not seek to withdraw his pleas prior to sentencing. The respondent also argues that to the extent the petitioner is alleging anything other than ineffective assistance of counsel, any such claims are procedurally defaulted. "A special defense is a pleading that alleges facts that show that a plaintiff has no cause of action. In regard to special defenses, the [respondent] bears the burden of proof. [The respondent has] the burden of proving every essential element of [the] special defense by a preponderance of the evidence. Morales v. Pentec, Inc., 57 Conn. App. 419,441, 749 A.2d 47 (2000).
While a ground for allowing a defendant to withdraw a plea after acceptance is that the plea resulted from the denial of effective assistance of counsel; Practice Book § 39-27(4); the respondent has not proven that the petitioner knew ineffective assistance of counsel was rendered prior to the sentencing. Additionally, the petitioner testified at the habeas corpus trial that he did not find out that he was parole ineligible until approximately eight months after sentencing, which this Court finds to be credible. Tr. (Jan. 31, 2002), at 20. The petitioner's sole habeas claim is one of ineffective assistance of counsel. In other words, there is no allegation other than ineffective assistance of counsel, so that the respondent's claim of procedural default is not relevant. This Court finds, consequently, that the special defense raised by the respondent is without merit.
The petitioner was charged in an information with one count of murder in violation of General Statutes § 53a-54a (a) and two counts of attempted murder in violation of General Statutes §§ 53a-49 and53a-54a (a). Am. Pet., at 1. The petitioner's jury trial on these charges began receiving evidence on July 26, 1993, but the trial stopped after the second witness had testified. Pet'r Ex. 1. The petitioner testified at the habeas trial that during a recess on the first day of testimony of the criminal trial, a plea offer was made by the state which entailed an agreed-upon sentence of twenty-five years in exchange for the petitioner's plea. Tr. (Jan. 31, 2002), at 17.
The petitioner testified that he asked his trial counsel, Attorney James Ruane, how much of the twenty-five years would have to be served.Id. According to the petitioner, Attorney Ruane advised him that he would have to serve twelve and one-half years before he would be eligible for parole. Id., at 17-8. The petitioner additionally testified that he accepted the plea offer because he thought, based upon his reliance on Attorney Ruane's advice, that he would be paroled after serving half of the proposed twenty-five year sentence. Id., at 18. He also testified CT Page 6925 that the only reason he accepted the plea offer was because of his understanding that he would get parole. Id., at 32.
Attorney Ruane testified that the state made a final offer to the petitioner on the first day of testimony during the criminal trial, said offer being "that if the [petitioner] pled guilty to the crime that he would receive the minimum sentence available under the law." Id., at 41. The minimum sentence for murder is twenty-five years. Attorney Ruane presented the state's offer to the petitioner and discussed with him how much of the twenty-five years the petitioner would have to serve. Tr. (Jan. 31, 2002), at 41. Attorney Ruane testified that he advised his client "that on a twenty-five year sentence that his release would be governed by at that time what [he] thought was the parole authorities and, as a general rule, parole can be granted after serving half the sentence, but that their regulations change, and so it would be up to the parole board." Id., at 41-2. It is evident from Attorney Ruane's responses on direct examination that while he today knows that persons convicted of murder are ineligible for parole, he in 1992 was not aware of the resultant parole ineligibility stemming from a murder conviction. Id., at 42.
The facts surrounding the petitioner's plea and the advice provided by counsel regarding parole eligibility in the context of a murder conviction are similar to those in State v. Andrews, 253 Conn. 497,752 A.2d 49 (2000). In Andrews, however, the defendant realized that he would be parole ineligible prior to sentencing and filed a motion to withdraw his guilty plea prior to sentencing based on his impression that he would only have to serve eight to fifteen years of a thirty-three year sentence. Id., at 501. After a hearing on the motion to withdraw the guilty plea, which the trial court denied, the defendant claimed on appeal "that statutory ineligibility for parole is a direct consequence of a guilty plea, and, therefore, that the trial court was required to inform him of that fact during the plea canvass in order for his waiver of his constitutional rights, which is implicit in a guilty plea, to be knowing and voluntary." Id., at 500.
The Andrews court held that "due process does not require a trial court to advise the defendant of his statutory parole ineligibility during a canvass plea." Id., at 512. The Supreme Court did, however, "recognize, as the defendant points out, that statutory parole ineligibility affects the amount of time that the defendant actually will spend in prison, and, unlike parole eligibility, is neither complex nor dependent on the discretion of the parole board." Id., at 512-3. The Supreme Court also noted that "[t]he record [in Andrews] does not indicate that either the trial court or the defendant's attorney suggested to the defendant that he would be eligible for parole. Rather, the defendant simply assumed CT Page 6926 that he would be eligible." Id., at 513.
In Falby v. Commissioner of Correction, 32 Conn. App. 438, 441,629 A.2d 1154, cert. denied, 227 Conn. 927, 632 A.2d 703 (1993), the petitioner, who had entered an Alford guilty plea to the crime of murder, claimed in his habeas corpus petition that trial counsel rendered ineffective assistance of counsel arising out of incorrect advice regarding a parole statute, General Statutes § 54-126a. The petitioner in Falby claimed "prejudice from the attorney's incorrect interpretation of the applicability to the petitioner of the new law governing live victim testimony at parole hearings."
"When [a] defendant waives his state court remedies and admits his guilt, he does so under the law then existing; further, he assumes the risk of ordinary error in either his or his attorney's assessment of the law and facts. An attorney's inaccurate statement of law to a defendant is not, per se, conduct outside the range of reasonable representation. Errors alone do not give rise to a claim of ineffective assistance; only errors so serious that counsel ceased functioning as counsel guaranteed by the sixth amendment." (Internal citations omitted.) Id., at 441-2.
The Appellate Court noted that it was "significant . . . that prior to enactment of 54-126a the parole board considered written victim testimony. The new law changed only the form of victim testimony in that the victim is now permitted to appear and give a statement. Therefore, the petitioner's only claim is that he was prejudiced by the physical presence of the victim's family, not by the fact that they gave testimony." Id., at 442. The Falby court held that the attorney's error "related to a procedural matter in a parole hearing" and that "[t]he misstatement was, at best, ordinary error." Id. Applying the Hill v.Lockhart test, the Appellate Court also held that the petitioner failed to prove prejudice, that he failed to prove "that it [was] probable that he would have continued with the trial had he known of the actual parole board procedure." Id., at 444.
The petitioner in Falby also claimed on appeal that his plea was rendered involuntary because of his attorney's erroneous advice. Id. The Appellate Court noted that "no error was made regarding the length of time the petitioner would spend in prison; the error dealt with the form of victim testimony during his parole hearing. . . . [T]he error was procedural: what form would the parole hearing take." Id., at 446. Because "[t]he form of testimony received by the parole board does not definitely, immediately and automatically affect the range of a defendant's punishment. . . . [and because] the procedure followed by the parole board is not information of which a defendant must be aware under [Practice Book § 39-19], . . . [the] parole board procedure is an CT Page 6927 indirect consequence of a guilty plea." Id.
The Falby court also noted that "if the petitioner relied on gross misadvice about an indirect consequence, his plea would have been involuntary, unintelligent and, therefore, invalid. Examples of gross misadvice that invalidate a guilty plea include an attorney's poor research and incorrect calculation of a defendant's parole eligibility. Conversely, where the sentence remains undetermined or the error minor, parole eligibility calculation errors alone are not gross misadvice." (Internal citations omitted.) Id., at 447. The Appellate Court held that "[t]he attorney error [in Falby did] not rise to the level of gross misadvice . . . [because the] petitioner was correctly advised about his eligibility for parole. The sole error involved the type of procedure that would be followed at any future parole hearings. This mistake is of a different order of magnitude than errors that constitute gross misadvice." Id.
In the matter before this Court, the petitioner discussed the state's plea offer with Attorney Ruane. Attorney Ruane advised the petitioner that "as a general rule, parole can be granted after serving half the sentence, but that their regulations change, and so it would be up to the parole board." Tr. (Jan. 31, 2002), at 41-2. General Statutes §54-125a (b)(1) in relevant part requires that: "No person convicted of any of the following offenses, which was committed on or after July 1, 1981, shall be eligible for parole under [§ 54-125a (a).]"[2] Murder, as defined by General Statutes § 53a-54a, is one such enumerated offense. The petitioner correctly points out that General Statutes §54-125a (b) was enacted with the passage of Public Act 90-261, which took effect on October 1, 1990 and "excluded from parole eligibility persons convicted of murder under General Statutes § 53a-54a." Pet'r Br., at 7. Both the date of the change of plea and the date of sentencing in this matter were nearly three years after General Statutes § 54-125a (b) took effect.
Attorney Ruane, who has been practicing law in Connecticut since 1977 and specializes in criminal defense; Tr. (Jan. 31, 2002), at 38; could have determined from General Statutes § 54-125a (b). which had been in effect for nearly three years prior to petitioner's change of plea, that pleading guilty to murder rendered the petitioner ineligible for parole.Falby v. Commissioner of Correction, supra, 32 Conn. App. 446-7; Straderv. Garrison, 611 F.2d 61, 63 (4th Cir. 1979). Based on the foregoing, this Court finds that Attorney Ruane's performance fell below the standard of reasonableness under prevailing professional norms and that Attorney Ruane's advice regarding the petitioner's parole eligibility was deficient. CT Page 6928
The petitioner in this case must also prove, however, that he was prejudiced by counsel's deficient performance. The petitioner must demonstrate that he would not have pleaded guilty, that he would have insisted on going to trial, and that the outcome of the trial would likely have been successful. Copas v. Commissioner, supra, 234 Conn. 151. "[A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendantaffirmatively prove prejudice." (Emphasis added.) Fisher v. Commissionerof Correction, 45 Conn. App. 362, 367, 696 A.2d 371, cert. denied,242 Conn. 912, 697 A.2d 183 (1997), quoting Strickland v. Washington, supra, 466 U.S. 693.
The petitioner testified that had he known that he would be ineligible for parole after pleading guilty to murder, he would not have pleaded and would have continued with the trial. Tr. (Jan. 31, 2002), at 18. He also testified that the only reason he accepted the plea was because he would get parole. Id., at 32. The petitioner was, prior to the change of plea, proceeding with his criminal trial and was defending against one count of murder and two counts of attempted murder. If found guilty on all three counts, the petitioner faced a maximum total effective sentence that could have far exceeded the twenty-five year minimum imposed for the murder conviction.[3] At the change of plea, Attorney Ruane indicated that there was a factual basis the court could find for the commission of the crime. Pet'r Ex. 2, at 9-10. Attorney Ruane testified that in preparation of the petitioner's case he was pursuing a self-defense theory, but the fact that the petitioner would have been carrying a gun or have access to a gun would undermine that defense. In addition, Attorney Ruane acknowledged that the circumstances of the petitioner firing many bullets at a car that was driving away would have made the self-defense claim difficult. Tr. (Jan. 31, 2002), at 43. Based upon the foregoing, this Court finds the petitioner's testimony not credible that the only reason he accepted the plea was because he was parole eligible and that he would have proceeded with the criminal trial had he known he was ineligible for parole.
The petitioner also testified at the habeas corpus trial that Attorney Ruane advised him he would serve twelve and one-half years and receive parole, that he accepted the plea offer because he thought he would be paroled after serving half of the twenty-five year sentence, and that the only reason he accepted the plea was because of the parole eligibility.Id., at 17-8 and 32. The petitioner's testimony is in direct conflict with that of Attorney Ruane, who testified that he advised the petitioner that his release would be governed by the parole authorities and that his release would be up to the parole board. Id., at 41-2. Attorney Ruane did not convey any certainty to the petitioner as to the actual time he would have to serve. Connecticut's parole statute "vests broad discretion in CT Page 6929 the judgment of the parole board. The statute does not give an inmate any right to demand or even apply for parole. It does not require that a parole board actually consider any inmate's eligibility for parole, even if he has fulfilled the statute's . . . requirements." Vincenzo v.Warden, 26 Conn. App. 132, 141, 599 A.2d 31 (1991). This Court finds Attorney Ruane's testimony to be credible and the petitioner's to be not credible.
This Court concludes, based upon the petitioner's exposure to a potential sentence much longer than twenty-five years should he be convicted after a trial, trial counsel's assessment of the difficulty proving self-defense in this case, together with the highly speculative nature of obtaining actual parole release, that the petitioner has failed to affirmatively show that he would have proceeded with the trial had he known that he would be ineligible for parole. The petitioner has not shown that but for counsel's deficient performance, the result of the proceedings would have been different. For all the foregoing reasons, the petitioner has failed to prove the claim raised in his Amended Petition. The petition seeking habeas corpus relief is denied.
GRAZIANI, JUDGE