STATE OF CONNECTICUT *v.* JEFFREY A. GROPPI
(AC 23000)

Foti, Schaller and McLachlan, Js.

Argued October 16, 2003—officially released February 3, 2004

*Neal Cone*, senior assistant public defender, for the appellant (defendant).

*Christopher T. Godialis*, assistant state's attorney, with whom, on the brief, were *Christopher L. Morano*,

chief state's attorney, and *John F. Blawie*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Jeffrey A. Groppi, appeals from the judgment of conviction rendered by the trial court subsequent to his plea of guilty to the charge of fraud in the sale of securities in violation of General Statutes § 36b-4.[1] On appeal, the defendant claims that (1) his guilty plea was not knowingly and voluntarily made because the court failed to inform him of one of the direct consequences of his plea and (2) the court improperly failed to make a determination, pursuant to General Statutes § 53a-28 (c), of his ability to pay restitution. We affirm the judgment of the trial court.

The following facts are relevant to the defendant's appeal. The defendant was a manager of Empire Investing Group, which dealt in commodity futures and foreign currency trading. From 1998 to 1999, the defendant, along with other employees of Empire Investing Group, personally retained and used the sum of $115,500 that had been given to the firm to be invested.

The defendant was arrested and charged with seven counts of fraud in the sale of securities in violation of General Statutes § 36b-4. The defendant and the state reached a plea agreement under which he would plead guilty to one count of fraud in the sale of securities,

---

[1] General Statutes § 36b-4 provides: "(a) No person shall, in connection with the offer, sale or purchase of any security, directly or indirectly: (1) Employ any device, scheme or artifice to defraud; (2) make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or (3) engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

"(b) No person shall, in connection with the offer, sale or purchase of any security, directly or indirectly engage in any dishonest or unethical practice."

pay $12,500 in restitution at the time of sentencing and pay $85,000 in restitution over the course of fifty-nine months.[2] The agreement was presented to the court. The specific amount of restitution was not discussed at the plea canvass, but was mentioned twice during sentencing. At the sentencing proceeding, the prosecutor stated that "[t]he plea agreement at the time of the plea called for . . . [r]estitution, $85,000 joint and several, after payment of $12,500 by each accused."[3] The court stated that "[t]he balance of $85,000, which will be joint and severable restitution, will be ordered over the first fifty-nine months of probation at the rate of $1425 a month." Neither defense counsel nor the defendant took issue with the court's statements that the defendant would make restitution in the amount of $85,000. This appeal followed.

## I

The defendant claims that his guilty plea was not knowingly and voluntarily made because the court failed to inform him of one of the direct consequences of his plea. The defendant argues that the restitution of $85,000 imposed pursuant to the plea agreement was a direct consequence of his guilty plea and, as such, the court was required to canvass him regarding restitution. We disagree.

At the outset, we set forth our standard of review. Our cases instruct that we conduct a plenary review of the circumstances surrounding the plea to determine if it was knowing and voluntary. See *State* v. *Irala*, 68 Conn. App. 499, 507, 792 A.2d 109 ("[a]t the appellate level, a 'determination as to whether a plea has been knowingly and voluntarily entered entails an examination of all of the relevant circumstances' "), cert. denied,

---

[2] There also was a provision for incarceration, but that provision is not relevant to the appeal.

[3] Other defendants agreed to pay restitution as well.

260 Conn. 923, 797 A.2d 519, cert. denied, 537 U.S. 887, 123 S. Ct. 132, 154 L. Ed. 2d 148 (2002); see also *In re Jason C.*, 255 Conn. 565, 571–75, 767 A.2d 710 (2001) (conducting full and complete review); *State* v. *Andrews*, 253 Conn. 497, 502–14, 752 A.2d 49 (2000) (same); *United States* v. *Good*, 25 F.3d 218, 219 (4th Cir. 1994) (de novo review); *United States* v. *Roberts*, 5 F.3d 365, 368 (9th Cir. 1993) (same).

A defendant entering a guilty plea waives several fundamental constitutional rights. *Boykin* v. *Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). "We therefore require the record affirmatively to disclose that the defendant's choice was made intelligently and voluntarily." (Internal quotation marks omitted.) *State* v. *Andrews*, supra, 253 Conn. 503. To satisfy that requirement, a defendant must be fully aware of the direct consequences of his or her plea. See *Brady* v. *United States*, 397 U.S. 742, 755, 90 S. Ct. 146, 325 L. Ed. 2d 747 (1970). Direct consequences are generally defined as consequences that are "definite, immediate and [that have] largely automatic effect[s] on the range of the defendant's punishment." *Cuthrell* v. *Director*, 475 F.2d 1364, 1366 (4th Cir.), cert. denied, 414 U.S. 1005, 94 S. Ct. 362, 38 L. Ed. 2d 241 (1973). In Connecticut, "Practice Book § 39-19 defines the scope of the . . . constitutional mandate that a defendant be advised of all direct consequences of his plea . . . ." *State* v. *Andrews*, supra, 507. Practice Book § 39-19 provides: "The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he or she fully understands: (1) The nature of the charge to which the plea is offered; (2) The mandatory minimum sentence, if any; (3) The fact that the statute for the particular offense does not permit the sentence to be suspended; (4) The maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from

consecutive sentences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction; and (5) The fact that he or she has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he or she has the right to be tried by a jury or a judge and that at that trial the defendant has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him or her, and the right not to be compelled to incriminate himself or herself."

The defendant argues that the restitution component of his sentence was a direct consequence of his guilty plea and, therefore, the court improperly failed to include the restitution in the plea canvass. The threshold issue of his claim is whether restitution is considered a direct consequence. "[O]ur case law clearly and consistently has limited the direct consequences of a guilty plea to those consequences enumerated in Practice Book § 39-19." *State* v. *Andrews*, supra, 253 Conn. 507; see also *State* v. *Gilnite*, 202 Conn. 369, 383–84, 521 A.2d 547 (1987). Our Supreme Court also has stated, albeit in obiter dictum, that it does "not hold, as a matter of law, that there can never be direct consequences to a guilty plea, i.e., consequences covered by the [*Boykin* v. *Alabama*, supra, 395 U.S. 242] constitutional mandate, beyond those listed in Practice Book § 39-19. Rather, we conclude that neither this court nor the Appellate Court has identified any such consequences to date." *State* v. *Andrews*, supra, 507 n.8. Despite that reservation, we find no reason to expand the list of direct consequences set forth in Practice Book § 39-19. Because restitution is not a direct consequence of a guilty plea, the court was not required to canvass the defendant to ensure that he had a full understanding

of the relationship between a guilty plea and restitution.[4] The defendant's claim fails.

II

The defendant's second claim is that the court improperly failed to make a determination, pursuant to § 53a-28 (c),[5] of his ability to pay restitution. The defendant argues that § 53a-28 (c) is mandatory and nonwaivable, and that the court's failure to conduct an

---

[4] We note that a court always may canvass a defendant beyond the requirements of Practice Book § 39-19.

[5] General Statutes § 53a-28 (c) provides: "In addition to any sentence imposed pursuant to subsection (b) of this section, if (1) a person is convicted of an offense that resulted in injury to another person or damage to or loss of property, (2) the victim requests financial restitution, and (3) the court finds that the victim has suffered injury or damage to or loss of property as a result of such offense, the court shall order the offender to make financial restitution under terms that it determines are appropriate. In determining the appropriate terms of financial restitution, the court shall consider: (A) The financial resources of the offender and the burden restitution will place on other obligations of the offender; (B) the offender's ability to pay based on installments or other conditions; (C) the rehabilitative effect on the offender of the payment of restitution and the method of payment; and (D) other circumstances, including the financial burden and impact on the victim, that the court determines makes the terms of restitution appropriate. If the court determines that the current financial resources of the offender or the offender's current ability to pay based on installments or other conditions are such that no appropriate terms of restitution can be determined, the court may forego setting such terms. The court shall articulate its findings on the record with respect to each of the factors set forth in subparagraphs (A) to (D), inclusive, of this subsection. Restitution ordered by the court pursuant to this subsection shall be based on easily ascertainable damages for injury or loss of property, actual expenses incurred for treatment for injury to persons and lost wages resulting from injury. Restitution shall not include reimbursement for damages for mental anguish, pain and suffering or other intangible losses, but may include the costs of counseling reasonably related to the offense. Restitution ordered by the court pursuant to this subsection shall be imposed or directed by a written order of the court containing the amount of damages for injury or loss of property, actual expenses incurred for treatment for injury to persons and lost wages resulting from injury as ascertained by the court. The order of the court shall direct that a certified copy of the order be delivered by certified mail to the victim and contain an advisement to the victim that the order is enforceable as a judgment in a civil action as provided in section 53a-28a."

analysis of his ability to pay deprived him of a statutory right under § 53a-28 (c).

We note that the defendant's claim is unpreserved.[6] The defendant argues that "[a] claim that a particular statutory right is 'nonwaivable as a matter of law,' made for the first time on direct appeal, is reviewable despite the fact that it was not raised [at trial]." In support of that proposition, the defendant cites *In re Manuel R.*, 207 Conn. 725, 733–36, 543 A.2d 719 (1988). A careful reading of *In re Manuel R.* has failed to unearth that principle.

The defendant also argues that his claim is reviewable under the plain error doctrine. See Practice Book § 60-5. Plain error review may be appropriate when a court fails to follow or apply a statute that is clearly relevant to the case. See generally *State* v. *Thornton*, 55 Conn. App. 28, 739 A.2d 271 (1999). Thus, the issue is whether a court is required to undertake an analysis pursuant to § 53a-28 (c) when, as part of a plea bargain, the defendant agrees to pay restitution.

"The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citation omitted; internal quotation marks omitted.) *State* v. *Courchesne*, 262 Conn. 537, 577, 816 A.2d 562

---

[6] The defendant's claim is unpreserved, no doubt, because he agreed to pay restitution pursuant to a plea bargain agreement.

(2003) (en banc). The language of the statute is the most important consideration in determining the meaning of the statute. Id. In addition, the legislature has stated that courts should first look to the "plain meaning" of the words of the statute when interpreting the statute's meaning. Public Acts 2003, No. 03-154. In light of those principles, we turn to the language of the statute.

Subsection (a) of § 53a-28 provides that "[e]xcept as provided in section 17a-699 and chapter 420b, to the extent that the provisions of said section and chapter are inconsistent herewith, every person convicted of an offense shall be sentenced in accordance with this title." The word "shall" suggests that compliance with the statute is mandatory. See *Grasso* v. *Zoning Board of Appeals*, 69 Conn. App. 230, 239–40, 794 A.2d 1016 (2002). Therefore, a court must utilize the statute when sentencing a defendant unless the statute does not apply to a particular situation.

In subsection (c), § 53a-28 provides that the court "shall consider" four factors "[i]n determining the appropriate terms of financial restitution . . . ." In subsection (c), the statute provides that "[i]f the court determines that the current financial resources of the offender or the offender's current ability to pay based on installments or other conditions are such that no appropriate terms of restitution can be determined, the court may forego setting such terms. . . ."

The legislature's continued use of the word "determine" is significant. "Determine" means, among other things, "to find out or come to a decision about by investigation, reasoning, or calculation." Merriam-Webster's Collegiate Dictionary (10th Ed. 1999). "Determine" also means "to settle or decide by choice of alternatives or possibilities." Id. As it is used in the context of § 53a-28 (c), the word "determine" implies that the legislature intended that subsection to apply

when the court itself was grappling with the decision to impose restitution; the factors set forth in § 53a-28 were intended to guide the court's "investigation, reasoning, or calculation[s]." Merriam-Webster's Collegiate Dictionary, supra.

When a court imposes restitution pursuant to a plea agreement, it does not choose between alternatives or reach a conclusion after investigation, reasoning or calculation. Rather, the court accepts an agreement between the state and the defendant. The plea negotiations and agreement between the defendant and the state relieve the court of the obligation to conduct an analysis pursuant to § 53a-28 (c) to determine "the appropriate terms of financial restitution . . . ." That is because the defendant and the state have had the opportunity to examine the circumstances, discuss various possibilities, and determine the most efficient and favorable outcome.

We conclude that the court did not commit plain error when it did not conduct an analysis pursuant to § 53a-28 (c) during sentencing because § 53a-28 (c) does not apply to plea bargains in which the defendant and the state already have agreed to a restitution amount.[7] If we were to reach the opposite result, we would be holding, in effect, that restitution is a direct consequence of a guilty plea.[8] That opposite result would create a situation in which restitution would eclipse in importance the other direct consequences set forth in Practice Book § 39-19. Not only would the court have to canvass a defendant regarding the issue of restitu-

---

[7] We note that our holding today does not encompass the situation in which the defendant and the state agree that restitution will be imposed, but leave it to the court to determine the amount. In a situation in which both parties agree to restitution and agree that the amount will be determined after argument to the court, § 53a-28 (c) would apply.

[8] Under such holding, restitution would not be a constitutional direct consequence, but rather a statutory direct consequence.

tion, the court also would have to analyze whether the defendant's answers to its canvass questions made sense in light of the relevant statutory criteria. Section 53a-28 (c) does not require that action by the court. The court, therefore, did not commit plain error by not conducting an analysis pursuant to § 53a-28 (c) prior to imposing restitution in accordance with the plea agreement between the state and the defendant.[9]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[9] We need not address the defendant's argument that the statute is nonwaivable because we hold that the statute does not apply.