STATE OF CONNECTICUT *v.* EARL BADGETT
(14202)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and BORDEN, Js.

Argued May 28—decision released August 6, 1991

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, was *Donald A. Browne,* for the appellant (state).

*G. Douglas Nash,* public defender, for the appellee (defendant).

COVELLO, J. This is an appeal from the judgment of the Appellate Court ordering a remand to the trial court for an evidentiary hearing to determine whether the defendant, Earl Badgett, should be allowed to withdraw his guilty plea. The issue presented is whether the defendant's plea of guilty complied with the rules of practice and with state and federal constitutional standards concerning guilty pleas, so as to render the

remand unnecessary. We reverse the judgment of the Appellate Court and remand the case to that court with direction to reinstate the trial court's judgment sentencing the defendant to a term of fifteen years imprisonment.

The Bridgeport police arrested the defendant for the unlawful sale of narcotics on June 2, 1989. At his arraignment before the trial court, *Damiani, J.,* on July 18, 1989, the state charged him with the illegal sale of narcotics under General Statutes § 21a-278 (b).[1] After waiving the reading of the information, the defendant pleaded not guilty. On October 23, 1989, the defendant appeared before the court, *Ronan, J.,* and changed his plea to guilty under the doctrine enunciated in *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).[2]

---

[1] General Statutes § 21a-278 (b) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marihuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less ten years nor more than twenty-five years. The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years or, (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution."

[2] Under *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), a criminal defendant is not required to admit his guilt, but consents to being punished as if he were guilty to avoid the risk of proceeding to trial. *State* v. *Amarillo,* 198 Conn. 285, 314 n.17, 503 A.2d 146 (1986). The state initially charged the defendant not only with violating General Statutes § 21a-278 (b), but also as a subsequent narcotics offender under General Statutes § 21a-277. As part of his plea bargain, the state nolled this subsequent narcotics offender charge.

At the plea hearing, before any canvass of the charge had occurred, the trial court told the defendant that he would receive a fifteen year sentence. During the trial court's subsequent canvass of the guilty plea, the defendant acknowledged that he understood the *Alford* doctrine and that he entered his plea voluntarily, knowingly and intelligently, with an understanding of the charge and its possible penalties, and after consultation with his attorney who had explained the charges to him.

On November 13, 1989, the trial court, *Ronan, J.*, accepted the defendant's plea and rendered judgment sentencing him to fifteen years imprisonment. During the sentencing proceeding, the following colloquy occurred:

"The Court: . . . Does your client wish to say anything?

"Mr. McIntosh [Assistant Public Defender, Defense Counsel]: If I may simply have a moment to inquire—Mr. Badgett does request to make a statement.

"The Court: What would you like to say Mr. Badgett?

"Mr. Badgett: I don't understand why I'm not drug-dependent when I am. I have sniffed a lot of cocaine in the last few years.

"The Court: You have already entered your plea. Your plea has been canvassed, Mr. Badgett. The time for that issue has passed. Your record speaks for itself. You haven't learned your lesson. You have been arrested and convicted of the same type of activity. If this sentence doesn't teach you a lesson and you come back in, this fifteen years is going to seem like a weekend. If you want to stay in that business, there's a risk. If you get caught, there's a price to be paid and that's

the price you're going to pay. It is the sentence of the Court that you be committed to the custody of the Commissioner of Corrections for fifteen years to serve." At no time did the defendant move to withdraw his plea.

Following sentencing, the defendant appealed to the Appellate Court claiming that the plea canvass did not comply with Practice Book § 711, and that the post-plea sentencing proceeding did not comply with Practice Book § 720. Specifically, the defendant argued that his statement to the court regarding his drug dependency was a timely request to reconsider whether his plea was knowing or voluntary under Practice Book §§ 720 and 721, and whether the original plea canvass complied with Practice Book § 711. The Appellate Court agreed with the defendant and remanded the case to the trial court for an evidentiary hearing to determine whether the defendant should be allowed to withdraw his plea of guilty. After the remand order, the state requested and we granted certification to appeal pursuant to Practice Book § 4126 et seq. We reverse the judgment of the Appellate Court and remand the case to that court with direction that it reinstate the judgment of the trial court.

I

The defendant argues here, as he did before the Appellate Court, that the plea canvass did not comply with Practice Book § 711.[3] Specifically, the defendant

---

[3] Practice Book § 711 provides: "The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he fully understands:

"(1) The nature of the charge to which the plea is offered;

"(2) The mandatory minimum sentence, if any;

"(3) The fact that the statute for the particular offense does not permit the sentence to be suspended;

"(4) The maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sen-

asserts that the trial court failed to ensure that the defendant fully understood "[t]he nature of the charge to which the plea is offered." The defendant maintains that the trial court's failure to explain that General Statutes § 21a-278 (b) exempts drug-dependent persons is a violation of Practice Book § 711 (1). We disagree.

Practice Book § 711 "was promulgated to ensure that such guilty pleas are made voluntarily and with full knowledge of the waiver of constitutional rights." *State* v. *Suggs,* 194 Conn. 223, 226, 478 A.2d 1008 (1984); *Blue* v. *Robinson,* 173 Conn. 360, 373–74, 377 A.2d 1108 (1977). We have held that "[a] defendant can voluntarily and understandingly waive these rights without literal compliance with the prophylactic safeguards of Practice Book §§ 711 and 712." *State* v. *Badgett,* 200 Conn. 412, 418, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986). Examination of the record discloses that the trial court canvassed the defendant concerning the voluntary and knowing nature of his plea pursuant to both Practice Book § 711 and the mandate of *Boykin* v. *Alabama,* 395 U.S. 238, 243 n.5, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969).[4] "Under *Boykin,* in order for a plea to be knowingly, voluntarily and intelligently made, a trial court is required to advise a defendant that his plea operates as a waiver of three fundamental constitutional

tences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction; and

"(5) The fact that he has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he has the right to be tried by a jury or a judge and that at that trial he has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself."

[4] We note that "the Practice Book provisions were designed to reflect the principles embodied in *Boykin* [v. *Alabama,* 395 U.S. 238, 243, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969)]." *State* v. *Badgett,* 200 Conn. 412, 418, 512 A.2d 160, cert. denied, 479 U.S. 94, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986).

rights—jury trial, confrontation and self-incrimination."
*State* v. *Badgett,* supra. An examination of the relevant
portions of the plea canvass[5] reveals the following: The
defendant specifically stated that he understood the

---

[5] The Court: . . . Have you had enough time to discuss your case and your plea with your attorney, Mr. McIntosh?

"The Defendant: Yes, I did.

"The Court: Are you satisfied with the advice he's given to you as to what you should do?

"The Defendant: Yes.

"The Court: And do you understand by pleading guilty to this one felony charge, Mr. Badgett, you are giving up or waiving certain rights you do have and among the rights you're giving up by pleading guilty are the following, you are giving up your right to remain silent and your right not to incriminate yourself in any way. You're giving up your right to confront your accusers and the right to allow your attorney the opportunity to cross-examine anyone who might testify against you. You're giving up your right to present any defenses you might have to this charge and your right not to testify at all at a trial, if you didn't want to, you don't have to. You're giving up your right to require the state to prove the charge against you beyond a reasonable doubt in order to convict you. When you plead guilty you give up or waive each one of those rights. Do you understand that?

"The Defendant: Yes, sir.

"The Court: Has anyone forced you or threatened you in any way, Mr. Badgett, to make you plead guilty?

"The Defendant: No, sir.

"The Court: . . . has anyone made any promises to you to make you plead guilty?

"The Defendant: No, sir.

"The Court: Are you pleading guilty freely and voluntarily and is that your own decision to do that at this time?

"The Defendant: Yes, sir.

"The Court: *And you heard the—the statute was read to you, however, did Mr. McIntosh your attorney explain that statute to you so you do understand what you're pleading guilty to and you do understand what the state would have to prove to convict you of the charge?* [Emphasis added.]

"The Defendant: Yes, sir.

"The Court: It was [General Statutes § 21a-278 (b)]?

"Mr. McIntosh [Assistant Public Defender]: Yes, your Honor.

"The Court: Sale?

"Mr. McIntosh: Yes, your Honor, sale of narcotics.

"The Court: Do you have any questions about the charge itself, Mr. Badgett?

ramifications of his *Alford* plea, that he understood the nature of the crime after discussing it with his attorney, that he was satisfied with his attorney's advice, that he understood he was waiving certain constitutional rights, that his plea was voluntary and that he did not have any further questions about the charge.

"The Defendant: No, sir.

"The Court: Now, you heard the facts recited by Mr. Benedict [Assistant State's Attorney] as to the actual facts that led to your arrest and you indicated that they occurred on June 2, 1989. Apparently, they observed you transact or make a couple of sales of narcotics thereafter you were apprehended, searched, they found in your possession forty glassine envelopes that contained the narcotic cocaine and twenty-two that contained the narcotic heroin and those facts as recited by the State's Attorney are the basis for the charge against you.

"Now you've entered what's known as an Alford Plea to that charge and do you understand that to mean this and is this what you want to do, that you're not admitting you did what the state claims you did at that date, time and place, however, you do realize and you do recognize with the evidence the state has if you went to trial it's quite possible you will be convicted and rather than risk a more severe sentence after a trial, you're pleading guilty to take advantage of what I've indicated I think is an appropriate sentence if you pled at this time, that's for a fifteen year sentence, and you don't want to risk what could happen if you went to trial and lost. Is that what you understand it to mean and is that what you want to do?

"The Defendant: Yes, sir.

"The Court: And you understand the maximum penalty, the statute you're charged under, is twenty years to serve and the minimum is five years. Do you understand?

"The Defendant: Yes.

"The Court: Are you on probation or parole for any other criminal offenses?

"The Defendant: No, sir.

"The Court: As you stand here this afternoon, Mr. Badgett, are you under the influence of any alcohol, drugs or medication or anything at all that might [a]ffect your ability to understand what you're doing in pleading to the charge?

"The Defendant: No, sir.

"The Court: And do you understand, Mr. Badgett, once I do accept your plea you will not have the right to change your mind. You can't come back to court at any later time, indicate you want to withdraw your plea or plead not guilty again because you will not be allowed to do that. Do you understand that?

Despite the defendant's assertions that he understood the charge, he claims that the "off-the-record" explanations given by his attorney did not provide adequate notice of the nature of the crime. We do not agree.

The record discloses that the defendant chose to waive the reading of the information at his arraignment on July 18, 1989. Further, we have never required that the trial court read the statute to the defendant in order for the canvass to comply with Practice Book § 711 if there are other reasons to believe that the defendant understands the statute. *State* v. *Eason,* 192 Conn. 37, 44, 470 A.2d 688 (1984). In this case, the defendant himself admitted that counsel had, in fact, explained the statute to him. The defendant's reliance on *Henderson* v. *Morgan,* 426 U.S. 637, 645, 96 S. Ct. 2253, 49 L. Ed. 2d 108 (1976) (guilty plea involuntary when neither counsel nor the court informed defendant about essential element), is misplaced. This is not a case like *Henderson* in which neither defense counsel nor the trial court had explained the nature of the charge to the accused. See *Oppel* v. *Lopes,* 200 Conn. 553, 557, 512 A.2d 888 (1986). Here, the defendant stated that he understood the charge and that his trial counsel had explained it to him.

We have previously held that § 21a-278 (b) places no burden on the state to prove that the defendant is not a drug-dependent person and that nondependency is not an element of the crime. *State* v. *Januszewski,* 182 Conn. 142, 165–67, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981). We have concluded that the state may initially rely on

"The Defendant: Yes.

"The Court: Do you have any questions, Mr. Badgett, about anything I've said to you, is there anything you don't understand, is there anything about the case that you would like to ask the Court about?

"The Defendant: No, sir."

a presumption of nondependency. Id. Even if the trial court did not rely upon the defendant's representation that he understood the crime with which he was charged, it did not have a duty to canvass the nature of the charge with respect to drug dependency at the plea hearing because it is not an element of the crime. "Whether the existence of some fact is an essential element of a crime depends upon whether the existence of that fact forms a part of the conduct prohibited by the statute; that is, whether the fact in question is part of the corpus delecti. . . . We conclude that the defendant's status as a person who is not drug-dependent is not an essential element of the offense charged. It is not a part of the prohibited conduct, i.e., the possession of a certain quantity of narcotic substance with intent to sell." *State* v. *Januszewski*, supra, 165–66. We, therefore, conclude that the trial court complied with Practice Book § 711 at the plea hearing.

## II

The defendant next argues that the postplea sentencing proceeding did not comply with Practice Book §§ 720[6] and 721 (1) and (2)[7] because his plea was entered without knowledge of the nature of the charge and as such was involuntary. We do not agree.

---

[6] Practice Book § 720 provides: "A defendant may withdraw his plea of guilty or nolo contendere as a matter of right until the plea has been accepted. After acceptance, the judicial authority shall allow the defendant to withdraw his plea upon proof of one of the grounds in Sec. 721. A defendant may not withdraw his plea after the conclusion of the proceeding at which the sentence was imposed."

[7] Practice Book § 721 provides in relevant part: "The grounds for allowing the defendant to withdraw his plea of guilty after acceptance are as follows:

"(1) The plea was accepted without substantial compliance with Sec. 711;

"(2) The plea was involuntary, or it was entered without knowledge of the nature of the charge or without knowledge that the sentence actually imposed could be imposed . . . ."

Once a guilty plea has been accepted it cannot be withdrawn except by leave of the trial court. Practice Book § 720; see also *State* v. *Collins,* 207 Conn. 590, 597, 542 A.2d 1131 (1988). The proper procedure for challenging the knowing and voluntary nature of the plea is by a motion to withdraw the plea before the conclusion of the proceeding at which sentence is imposed. Practice Book § 720. Ordinarily, the failure to file such a motion will preclude review of alleged infirmities in the acceptance of the plea. While we have recognized exceptions to the general rule; *State* v. *Childree,* 189 Conn. 114, 115, 454 A.2d 1274 (1983); the present case does not fall within any such exception.[8]

---

[8] The defendant's reliance upon *State* v. *Morant,* 13 Conn. App. 378, 536 A.2d 605 (1988), for the proposition that no motion to withdraw should be required in this case, is unavailing. At the sentencing hearing in *Morant,* the defendant stated: "I had not pleaded guilty to this court on my own recognition. I was on a pressure force to plead guilty. It was the way to withdraw—" Id., 382. Subsequently, the court interrupted the defendant numerous times but he did manage to assert that he wanted to appeal. Id. Morant never filed a motion or stated orally that he wanted to withdraw his plea but the Appellate Court concluded that his statements were clear evidence that his plea had not been entered voluntarily and ordered a remand to the trial court for an evidentiary hearing to determine whether the defendant should be allowed to withdraw his plea of guilty. Id. The facts in this case are distinguishable. The defendant never asserted to the trial court that his plea was involuntary; in fact, he never mentioned his plea. His assertions that he was drug-dependent were more akin to claims of innocence to the crime of narcotics sales by a person who is not drug-dependent under General Statutes § 21a-278 (b) than to any misunderstanding of the nature of the charge. It is instructive to note that he maintained that he understood the charge at the plea canvass and that the defendant himself raised the issue of drug dependency at the sentencing hearing, thereby indicating that he knew the nature of the charge. Furthermore, since the defendant pleaded guilty under the doctrine of *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), he may maintain his innocence while simultaneously entering a guilty plea. The court is under no obligation to review his *Alford* plea merely because the defendant contends that he is innocent. Also, contrary to *State* v. *Morant,* supra, there is no evidence that the sentencing judge foreclosed the defendant's opportunity to move to withdraw his plea.

The defendant, who was at all times represented by counsel, had ample opportunity to move to withdraw his plea but failed to do so. Even if we did conclude that the defendant's statement was the equivalent of a motion to withdraw his plea, we have earlier concluded that the trial court complied with the requirements of Practice Book § 711 and that the defendant entered his plea voluntarily with knowledge of the nature of the charge. Therefore, the grounds for a plea withdrawal, relied upon by the defendant as set forth in Practice Book § 721 (1) and (2), are without merit. See footnote 8, supra.

## III

The defendant's final argument is that his guilty plea was invalid because he did not have a sufficient understanding of the offense and the law in relation to the facts as constitutionally required by *State* v. *Childree,* supra, 121. It is appropriate, in assessing such a claim, for the trial court to presume that counsel adequately explained the charge to the defendant, given that there is some indication on the record that an explanation occurred. *Oppel* v. *Lopes,* supra, 556–59; *State* v. *Childree,* supra, 123–24. Since we have already concluded under the more stringent Practice Book standards that the defendant understood the nature of the charge to which the plea was offered, we need not repeat that discussion here.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reinstate the judgment of the trial court.

In this opinion the other justices concurred.