## STATE OF CONNECTICUT *v.* EDWARD T. HATCH
### (AC 22164)

Foti, Mihalakos and Peters, Js.

Argued October 22, 2002—officially released March 18, 2003

*Elizabeth Gleason*, assistant public defender, with whom was *G. Douglas Nash*, public defender, for the appellant (defendant).

*Julia K. M. Conlin*, deputy assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Corinne L. Klatt*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

PETERS, J. This case concerns the validity of a plea agreement. The issue is whether a plea is knowing and

voluntary if the defendant is not informed, at the time of the plea hearing, that his contemplated period of probation would require compliance with special conditions. This is an issue of first impression. Although we conclude that a defendant must be apprised of these conditions when entering a guilty plea, we affirm the judgment of the trial court because the court had no duty itself to inform the defendant of his ability to withdraw the plea.

The state charged the defendant, Edward T. Hatch, with larceny in the sixth degree pursuant to General Statutes § 53a-125b.[1] On October 12, 2000, the defendant entered a plea of guilty to the larceny count and to being a persistent offender pursuant to General Statutes (Rev. to 1999) § 53a-40 (c), now (e). At that time, the court formally accepted the plea bargain and advised the defendant that he would be required to serve five years of incarceration, suspended, and three years of probation.

The trial court deliberately stayed the sentencing proceeding from October to April to give the defendant the opportunity to demonstrate his eligibility for probation by remaining in drug counseling and providing urine samples. The defendant remained drug free during this period.

At the sentencing hearing, the court informed the defendant that his probation was subject to the "condition of regular probation, which mostly every defendant in the state gets." The court then imposed the following conditions on the defendant's probation: (1) the defendant would be required to continue his drug treatment; and (2) the defendant would be required to provide

---

[1] At a supermarket, the defendant hid approximately $250 of film in his shirt and then attempted to leave the store without paying for the film.

The defendant was also charged with the crime of failure to appear on February 24, 2000. This charge was nolled according to the plea agreement.

random urine samples for drug testing. This was the first time that the defendant was informed of these conditions to his probation. The defendant immediately protested, but did not move to withdraw his guilty plea.

In this appeal, the defendant maintains that the trial court's belated disclosure of these special conditions violated his constitutional right to due process. The fact that the court denominated these conditions as standard provisions does not make them so. The state agrees with the defendant that conditions of drug testing and treatment are special conditions of probation.[2] See *State* v. *Durkin*, 219 Conn. 629, 631, 595 A.2d 826 (1991); *State* v. *Thorp*, 57 Conn. App. 112, 114, 747 A.2d 537, cert. denied, 253 Conn. 913, 754 A.2d 162 (2000); *State* v. *Gaston*, 56 Conn. App. 125, 126 n.1, 741 A.2d 344 (1999).

The defendant does not challenge the authority of the court to add special conditions to his probation. See General Statutes (Rev. to 1999) § 53a-30 (a) (13), now (16). He claims, instead, that he should have been informed of these conditions at the time of the plea hearing rather than at the time of the sentencing hearing. Because of the delay in receiving this important information, he maintains that the trial court, after hearing the defendant's objection at the sentencing hearing, should have advised him of his right to withdraw his plea pursuant to the provisions of Practice Book §§ 39-26 and 39-27.[3]

---

[2] The state argues that the definition of probation includes *any* condition of probation imposed by the court. The state relies, however, only on the unpublished opinion of *United States* v. *Rice*, 937 F.2d 614 (9th Cir. 1991) (holding that plea agreement silent as to conditions of probation includes all conditions reasonable under the circumstances unless agreement expressly provides otherwise), cert. denied, 502 U.S. 1071, 112 S. Ct. 966, 117 L. Ed. 2d 132 (1992). Aside from lacking precedential value, it is not a case that addresses special conditions.

[3] Practice Book § 39-26 provides: "A defendant may withdraw his or her plea of guilty or nolo contendere as a matter of right until the plea has been accepted. After acceptance, the judicial authority shall allow the defendant to withdraw his or her plea upon proof of one of the grounds in Section

Before we can address the merits of the defendant's claim, however, we must determine whether his claim is properly before us. Ordinarily, a defendant who challenges the propriety of a sentence should move to withdraw his guilty plea. Practice Book § 39-26; *State* v. *Badgett*, 220 Conn. 6, 16, 595 A.2d 851 (1991); *State* v. *Webb*, 62 Conn. App. 805, 810, 772 A.2d 690 (2001). Because the defendant did not do so, he arguably failed to preserve his claim before the trial court. We nonetheless can address his claim if it qualifies for appellate review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[4] We conclude that it does not.

"Under the *Golding* doctrine, a defendant can prevail on a claim of constitutional error not preserved at trial

39-27. A defendant may not withdraw his or her plea after the conclusion of the proceeding at which the sentence was imposed."

Practice Book § 39-27 provides that "[t]he grounds for allowing the defendant to withdraw his or her plea of guilty after acceptance are as follows:

"(1) The plea was accepted without substantial compliance with Section 39-19;

"(2) The plea was involuntary, or it was entered without knowledge of the nature of the charge or without knowledge that the sentence actually imposed could be imposed;

"(3) The sentence exceeds that specified in a plea agreement which had been previously accepted, or in a plea agreement on which the judicial authority had deferred its decision to accept or reject the agreement at the time the plea of guilty was entered;

"(4) The plea resulted from the denial of effective assistance of counsel;

"(5) There was no factual basis for the plea; or

"(6) The plea either was not entered by a person authorized to act for a corporate defendant or was not subsequently ratified by a corporate defendant."

[4] Aside from arguing that *Golding* applies, the defendant contends that his objections before the court constituted a motion to withdraw his plea. The defendant relies on *State* v. *Morant*, 13 Conn. App. 378, 536 A.2d 605 (1988). In that case, the defendant, himself, informed the court during the sentencing hearing that he was pressured to plead guilty. Id., 384. On appeal, we held that the defendant's assertion was a motion to withdraw his plea and instructed the court to determine if withdrawal was warranted. Id., 385–86. Unlike the defendant in *Morant*, the defendant in this case did not expressly state that his plea was involuntary. The defendant's confusion over the terms of the plea agreement does not constitute a motion to withdraw.

only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; internal quotation marks omitted.) *State* v. *Gordon*, 69 Conn. App. 691, 695, 796 A.2d 1238 (2002).

The defendant's claim meets two of the *Golding* requirements. The record is adequate for our review. The propriety of a guilty plea implicates a defendant's due process rights. *Boykin* v. *Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); *State* v. *Andrews*, 253 Conn. 497, 502–503, 752 A.2d 49 (2000). We must, therefore, determine whether a due process violation clearly exists. See *State* v. *Golding*, supra, 213 Conn. 239–40. This is the central inquiry in most *Golding* cases.

The crux of the defendant's claim of a due process violation is that he had no way of knowing, at the time he entered his guilty plea, that his probation would be subject to the special conditions attached by the court. See *State* v. *Andrews*, supra, 253 Conn. 502–503. In his view, it was reasonable for him to expect to be bound by the standard conditions of probation that are set out in § 53a-30.[5] He argues, however, that it was not

[5] General Statutes (Rev. to 1999) § 53a-30 (a) provides: "When imposing sentence of probation or conditional discharge, the court may, as a condition of the sentence, order that the defendant: (1) Work faithfully at a suitable employment or faithfully pursue a course of study or of vocational training that will equip him for suitable employment; (2) undergo medical or psychiatric treatment and remain in a specified institution, when required for that purpose; (3) support his dependents and meet other family obligations; (4) make restitution of the fruits of his offense or make restitution, in an amount he can afford to pay or provide in a suitable manner, for the loss or damage caused thereby and the court may fix the amount thereof and the manner

reasonable for him to be bound by conditions relating to drug treatment and testing that are not listed as standard or special conditions in our statutes.

Our inquiry is twofold. We must first determine whether a court must disclose to a person who contemplates pleading guilty the nonstandard conditions of probation that he will face at the time of sentencing. We must then determine whether, if a court has not made such a disclosure before the time of sentencing, it must apprise the defendant of his right to withdraw his guilty plea.

## I

It is hornbook law that a plea of guilty does not pass constitutional muster if the plea is not knowing and voluntary.[6] Id. At the time of taking a plea bargain, a court is obligated to inform a defendant of four constitutional rights that are waived by a guilty plea.[7] Practice Book

of performance; (5) if a minor, (A) reside with his parents or in a suitable foster home, (B) attend school, and (C) contribute to the his own support in any home or foster home; (6) post a bond or other security for the performance of any or all conditions imposed; (7) refrain from violating any criminal law of the United States, this state or any other state; (8) . . . participate in an alternate incarceration program; (9) reside in a residential community center or halfway house approved by the Commissioner of Correction, and contribute to the cost incident to such residence; (10) participate in a program of community service labor in accordance with section 53a-39c; (11) participate in a program of community service in accordance with section 51-181c; (12) . . . undergo specialized sexual offender treatment; (13) satisfy any other conditions reasonably related to the defendant's rehabilitation. . . ." Subdivision (13) in the 1999 revision of the General Statutes is subdivision (16) in the 2003 revision.

[6] The state argues that we should affirm the trial court's judgment because the conditions imposed are reasonable. We are not questioning the court's authority to impose a special condition under General Statutes (Rev. to 1999) § 53a-30 (a) (13), or the reasonableness of the conditions in this case. Rather, we are concerned with whether the defendant should be apprised of such conditions prior to entering a plea of guilty.

[7] The court must inform the defendant during the plea canvass that the defendant has "the right to be tried by a jury or a judge and that at that trial the defendant has the right to the assistance of counsel, the right to

§ 39-19 (5); *State* v. *Andrews,* supra, 253 Conn. 503. The question in this case is whether the court has any further responsibility to inform such a defendant of the details of the sentence that the court will impose.

Some cases have held that the court need inform the defendant only of the direct consequences of his plea. See *In re Jason C.,* 255 Conn. 565, 572–73, 767 A.2d 710 (2001); *State* v. *Andrews,* supra, 253 Conn. 505–14. In those cases, the court limited the direct consequences of a plea to those listed under Practice Book § 39-19. Those consequences include: "the mandatory minimum and maximum possible sentences; Practice Book § [39-19 (2) and (4)]; the maximum possible consecutive sentence; Practice Book § [39-19 (4)]; the possibility of additional punishment imposed because of previous conviction(s); Practice Book § [39-19 (4)]; and the fact that the particular offense does not permit a sentence to be suspended. Practice Book § [39-19 (3)] . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Andrews,* supra, 505.

Because Practice Book § 39-19 does not expressly require the disclosure of special conditions of probation, the state maintains that the court had no duty to inform the defendant of such conditions. None of the cases cited by the state, however, addresses the disclosure of special conditions of probation. The state relies on *State* v. *Andrews,* supra, 253 Conn. 512–13 (parole eligibility is not direct consequence of guilty plea), and *Sherbo* v. *Manson,* 21 Conn. App. 172, 183–84, 572 A.2d 378 (misinformation about court recommendation for placement at Whiting Forensic Institute not direct consequence), cert. denied, 215 Conn. 808, 809, 576 A.2d 539 (1990). In another case, on which the state relies, we held that the trial court was not required to disclose

confront and cross-examine witnesses against him or her, and the right not to be compelled to incriminate himself or herself." Practice Book § 39-19 (5).

the direct and indirect consequences of a plea, but that case is distinguishable because the court found that the defendant, at all relevant times, had been fully aware of all aspects of his plea bargain. *State* v. *Winer*, 69 Conn. App. 738, 748–49, 796 A.2d 491, cert. denied, 261 Conn. 909, 806 A.2d 50 (2002).

Is a substantive change in special conditions of probation a direct consequence of a plea that a trial court must disclose? Perhaps disclosure may not be required if the defendant could have discovered the condition that the court intended to impose by searching our case law, statutes or rules of practice. This is not such a case. Although § 53a-30 (a) (13), now (16), authorizes a court to add whatever conditions to probation the court deems appropriate to fulfill the goal of reforming the defendant and preserving the safety of the general public; *State* v. *Pieger*, 240 Conn. 639, 647, 692 A.2d 1273 (1997); the statute does not limit the court's authority in any predetermined way.

In the absence of notice from other sources, the defendant persuades us that the addition of special conditions relating to drug testing and treatment during his time on probation is a direct consequence of a plea.[8] Such required disclosures would be limited to the facts of this case. We doubt, for example, that the court at sentencing would have had the authority to lengthen the period of probation as a result of the defendant's disagreement, of any kind, with his probation officer.

Our conclusion comports with the court's "affirmative, nondelegable duty to clarify the terms of a plea agreement." *State* v. *Garvin*, 242 Conn. 296, 309–10, 699 A.2d 921 (1997). A defendant cannot make an intelligent and knowing decision with regard to a probation sen-

---

[8] Our Supreme Court has never held that, under any and all circumstances, the requirements of our rules of practice constitute the universe of direct consequences of a guilty plea. *State* v. *Andrews*, supra, 253 Conn. 507 n.8.

tence without any knowledge of the special conditions attached thereto.

## II

In light of our conclusion that a special condition of probation is a direct consequence of a guilty plea that a defendant has the right to know about at the time of his guilty plea, we must address the consequences of the court's failure to advise the defendant of this information. Specifically, the question is whether the court had the obligation, at sentencing, to advise the defendant that in light of his awareness of the special conditions of his probation, he should consider withdrawal of his guilty plea.

"The proper procedure for challenging the knowing and voluntary nature of the plea is by a motion to withdraw the plea before the conclusion of the proceeding at which sentence is imposed." *State* v. *Badgett*, supra, 220 Conn. 16; *State* v. *Webb*, supra, 62 Conn. App. 810. If the defendant does so after the acceptance of the plea, then the defendant must prove one of the grounds for withdrawal set forth in Practice Book § 39-27.[9]

The responsibility for withdrawing a guilty plea lies with the defendant. Section 39-26 requires an affirmative act by the defendant—filing the motion to withdraw or, if after the acceptance of the plea, filing such a motion and proving one of the grounds listed in Practice Book § 39-27. Our case law states that a defendant's failure to so move usually precludes review of the alleged defects of a guilty plea. *State* v. *Badgett*, supra, 220 Conn. 16. Nowhere do our rules of practice or our case law impose a duty on the court to file such a motion

---

[9] The defendant argues that his guilty plea meets two of the grounds for withdrawal provided by Practice Book § 39-27. Specifically, the guilty plea should be withdrawn because it was involuntary and the sentence imposed exceeded that specified by the agreement. See footnote 3.

or to remind the defendant to do so. Accordingly, the onus is on the defendant, not the court.

The record reveals that the defendant did not move to withdraw his guilty plea. At the sentencing hearing on April 9, 2001, the defendant stated his understanding that the plea agreement was for "regular probation" without any special conditions. The court responded that the defendant was on "regular probation" and ended the hearing.[10]

At all times relevant to this appeal, the defendant was represented by counsel. Once the defendant expressed his confusion over the terms of the guilty plea, defense counsel could have moved to withdraw the plea. At the very least, counsel could have asked for a continuance to confer with the defendant. Despite the court's late explanation as to the special conditions

---

[10] The colloquy between the court and the defendant was as follows:

"The Court: Mr. Hatch, as far as being a persistent larceny offender, five years in jail suspended, three probation. That's the agreement reflected in the transcript. Conditions are, you continue on the drug treatment, random urines.

"The Defendant: Excuse me, Your Honor?

"The Court: Yes, sir.

"The Defendant: At the time that we had our agreement, you told me that you were going to put me on regular probation. . . .

"The Court: You are on regular probation.

"The Defendant: Now, you are saying there's a condition to continue with drug treatment. Our agreement is, as I understood it, was five months, bail commissioner's office, three times a week, with random urinalysis, continue with the drug treatment program that I was in. . . .

\* \* \*

"The Court: . . . I'm just adhering to an agreement that was made with you. As far as terminology, you used regular probation. You are on regular probation. As a condition of regular probation, which mostly every defendant in this court or any other court in the state gets, is for drug evaluation and or treatment. . . . Mr. Hatch, you have an exception to my ruling. . . . Five years suspended, three probation. . . . I would suggest, Mr. Hatch, you go to room 105, check in there. And, I wish you luck in the future, sir. . . .

\* \* \*

"The Court: Mr. Hatch, you're all done. Thank you very much.

"The Defendant: Appeal the decision."

of probation, it was the defendant who had the laboring oar to seek withdrawal of his guilty plea.[11]

Because the court did not have a duty to remind the defendant of the withdrawal procedure, we conclude that there was no due process violation. The defendant's claim, therefore, does not satisfy the third prong of *Golding.* Accordingly, we need not address the fourth *Golding* provision with respect to harmless error.

The judgment is affirmed.

In this opinion the other judges concurred.

[11] We decline to address the defendant's arguments regarding the propriety of his plea under Practice Book § 39-27. These arguments involve the merits of a motion to withdraw a guilty plea.