STATE OF CONNECTICUT *v.* KEITH MORDASKY
(AC 24178)

Lavery, C. J., and West and Peters, Js.

Argued May 26—officially released August 10, 2004

438

*Lori A. Wirkus*, special public defender, for the appellant (defendant).

*Melissa L. Streeto*, deputy assistant state's attorney, with whom, on the brief, were *Matthew C. Gedansky*, state's attorney, and *Keith J. Currier*, assistant state's attorney, for the appellee (state).

*Opinion*

PETERS, J. In this criminal appeal, the defendant challenges the validity of a plea agreement that he entered into with the state. The principal issue is whether the defendant's rights to due process were violated as a result of his alleged incompetence at the time of his acceptance of the plea agreement. The trial court determined that the defendant had entered his plea in a knowing and voluntary manner. We agree and therefore affirm the judgment of the trial court.

In a two count information, the state charged the defendant, Keith Mordaksy, with threatening in the second degree in violation of General Statutes § 53a-62, and breach of the peace in the second degree in violation of General Statutes § 53a-181. This information arose out of an alleged threat to kill a child.

On September 4, 2002, after the defendant's arrest, he appeared before the trial court in the first of a series of hearings. Because of several spontaneous and disorganized comments that the defendant made at that hearing, the state raised concerns about his ability to understand the proceedings. As a result, the court, on its own motion, ordered a competency examination pursuant to General Statutes § 54-56d (c) and continued the matter.

Shortly thereafter, on October 30, 2002, the parties again appeared before the trial court for a competency hearing. In the meantime, a competency monitor and treatment team (competency team) had examined the defendant. Testifying on behalf of the competency team, Helen Gori, a clinical social worker, told the court that, although the defendant had prematurely ended an evaluation session,[1] the competency team had been able to observe the defendant's behavior and to evaluate his comments and answers to questions. The competency team had concluded that it was unclear whether the defendant understood the charges against him and that it was unlikely that the defendant could cooperate with his attorney or assist in his own defense. Nonetheless, the competency team also concluded that, with sufficient inpatient treatment, the defendant could be restored to competency within sixty days.

On February 28, 2003, the court held another hearing after having been informed that the competency team had completed another evaluation report. In this report, dated February 11, 2003 (report), the competency team unanimously found the defendant competent to stand trial. Specifically, the report described the defendant's ongoing cooperation with several treatment measures, including taking his prescribed medication. The report concluded that, despite the defendant's expression of some grandiose and psychotic delusions, he was "well able to separate out his delusional beliefs from consideration of his current legal situation."[2]

---

[1] The defendant ended the session when he learned that his attorney would not be present.

[2] The competency team determined that while "[the defendant] continues to harbor a complex delusional belief system . . . [t]his does not intrude onto his rational consideration of his legal options. He understands the charges he is facing, the range of penalties, and the choices he had. He has indicated that he wishes to resolve his cases through the court system and feels he would be fairly treated."

At that hearing, consistent with the report, the defendant waived his right to a competency hearing and asked the court to find him competent. After reviewing the competency team's report, the court made such a finding. Also at that time, at the request of defense counsel, the court appointed a guardian ad litem for the defendant. Finally, the court instructed the defendant that, until his next court date, he was to continue to receive treatment at a local mental health facility and to take his prescribed medication as directed.

On March 12, 2003, at the plea hearing that is the subject of this appeal, the defendant pleaded guilty to second degree breach of the peace under the *Alford* doctrine.[3] The state agreed to nolle the threatening charge as well as other unrelated motor vehicle infractions.

The state offered the following factual basis for the *Alford* plea. On July 18, 2002, the victim, a twelve year old girl, and her two younger brothers, were leaving a grocery store in Stafford. As they left, an older black man, later determined to be the defendant, was sitting in a black car with a red stripe. The man allegedly rolled down his car window and threatened to kill the victim. The children returned home immediately and reported the incident to their mother, who called the police. In light of the children's description, the police identified the defendant as a possible suspect and proceeded to locate and interview him. They arrested him after he admitted that he had driven a car matching the vehicle described by the children in the proximity of the identified grocery store.

---

[3] *North Carolina* v. *Alford*, 400 U.S. 25, 37–38, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), permits a criminal defendant to plead guilty without admitting that he committed the crime in order to take advantage of a plea bargain and to avoid the risk of conviction after a trial and possibly a more severe sentence.

After conducting a canvass of the defendant, the court accepted his *Alford* plea. The court determined that the "defendant's plea is knowingly and voluntarily made with the assistance of competent counsel, also with the assistance of his guardian ad litem." In accordance with the terms of the plea agreement, the trial court sentenced the defendant to ninety days imprisonment, execution suspended, and nine months of probation with special conditions.[4]

Although the defendant did not move to withdraw his plea in the trial court, in this appeal he challenges the validity of his plea agreement. He claims that the trial court (1) improperly concluded that his plea of guilty was knowing and voluntary without holding a separate evidentiary hearing into his competence to enter into a plea agreement and (2) conducted a constitutionally defective plea canvass. We are not persuaded.

I

MOOTNESS

As a threshold issue, we must address whether intervening events have rendered this appeal moot.[5] We lack subject matter jurisdiction to consider the merits of a moot case. *Loisel* v. *Rowe*, 233 Conn. 370, 377–78, 660 A.2d 323 (1995).

The issue of mootness arises from the fact that, during the pendency of this appeal, the defendant's probation, as stipulated in the plea agreement, has expired. Accordingly, if we were to agree with his claim about the invalidity of the plea agreement, we would be unable

---

[4] These special conditions were that the defendant was to "seek whatever treatment and counseling deemed appropriate by the North Central Mental Health District . . . to take all medications as described . . . [and] to comply with all conditions as imposed by the North Central Mental Health District."

[5] Although neither party has raised or briefed this issue, we consider it sua sponte.

to provide him any practical relief with respect to his sentence.

Nevertheless, an otherwise moot question may qualify for review under the "capable of repetition, yet evading review" exception. This exception permits review if other actions in the future (1) will encounter similar time constraints precluding appellate review, (2) will affect a group of similar complainants for whom this litigant may reasonably serve as a surrogate and (3) will similarly raise a question of public importance. Id, 382. All three criteria are satisfied under the circumstances of this case.

First, the defendant pleaded guilty to a misdemeanor, which, as a matter of statutory law, is punishable by a maximum term of imprisonment of one year. General Statutes § 53a-26 (a). This truncated exposure to imprisonment makes it unlikely that the constitutionality of a plea agreement involving a misdemeanor can ever be heard before the expiration of the term of punishment. Second, this defendant reasonably may serve as a surrogate for similar misdemeanor defendants. Finally, because the defendant has raised a constitutional issue with respect to his competence to enter into a plea agreement, he has presented an issue that qualifies as a question of public importance.

We conclude, therefore, that we have subject matter jurisdiction to hear the merits of the defendant's appeal. Neither party has argued to the contrary.

II

APPELLATE REVIEW

At the outset, the defendant concedes that each one of his claims about the validity of his plea is unpreserved. Ordinarily, a defendant who challenges the knowing and voluntary nature of his plea should move to withdraw his guilty plea or file a postsentence motion

with the trial court. Practice Book § 39-26; *State* v. *Badgett*, 220 Conn. 6, 16, 595 A.2d 851 (1991).

Nonetheless, the defendant asks for review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The state concedes that both of the defendant's claims meet the first two prongs of *Golding* because the record is adequate for review and they are of constitutional magnitude. See *State* v. *Hatch*, 75 Conn. App. 615, 619, 816 A.2d 712 ("[t]he propriety of a guilty plea implicates a defendant's due process rights"), cert. granted on other grounds, 263 Conn. 920, 822 A.2d 244 (2003), appeal withdrawn May 14, 2004, cert. denied, 270 Conn. 901, 853 A.2d 520 (2004) (state was granted permission to file late petition for certification). Therefore, we may proceed to an analysis of whether a due process violation clearly exists. See *State* v. *Golding*, supra, 239–40. Accordingly, we will address the defendant's claim that his plea was involuntary and the plea canvass was improper.

### III

### COMPETENCE TO ENTER A PLEA

The defendant's first claim on appeal is that the trial court violated his due process rights to a fair trial because it accepted his *Alford* plea without ordering, on its own motion, another evidentiary hearing concerning his competence. In the defendant's view, the court had before it substantial evidence that established a reasonable doubt about his competence to plead guilty. We disagree.

As a matter of constitutional law, it is undisputed that "the guilty plea and subsequent conviction of an accused person who is not legally competent to stand trial violates the due process of law guaranteed by the state and federal constitutions. Conn. Const., art. I, § 8; U.S. Const., amend. XIV, § 1; see *Pate* v. *Robinson*, 383

U.S. 375, 378, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966)." (Internal quotation marks omitted.) *State* v. *Johnson*, 253 Conn. 1, 20, 751 A.2d 298 (2000). This constitutional mandate is codified in our state law by § 54-56d (a), which provides that "[a] defendant shall not be tried, convicted or sentenced while he is not competent. For the purposes of this section, a defendant is not competent if he is unable to understand the proceedings against him or to assist in his own defense."[6] General Statutes § 54-56d (a).

Although our state law presumes the competence of defendants; see General Statutes § 54-56d (b); "the rule of *Pate* v. *Robinson* [supra, 383 U.S. 375] imposes a constitutional obligation, under the due process clause, [for the trial court], to undertake an independent judicial inquiry, in appropriate circumstances, into a defendant's competency to stand trial or to plead guilty." *State* v. *Watson*, 198 Conn. 598, 605, 504 A.2d 497 (1986).[7] "Competence to stand trial is a legal question, which must ultimately be determined by the trial court." (Internal quotation marks omitted.) *State* v. *George B.*, 258 Conn. 779, 786, 785 A.2d 573 (2001). Thus, "[t]he decision to grant [an evidentiary] hearing [to determine a defendant's competence] requires the exercise of sound judicial discretion." *State* v. *Lloyd*, 199 Conn. 359, 366, 507 A.2d 992 (1986).

The defendant concedes that neither he nor his counsel requested a *Pate* hearing at the time of his plea hearing. As a result, the trial court did not make an

---

[6] "This statutory definition mirrors the federal competency standard enunciated in *Dusky* v. *United States*, 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960) (per curiam)." (Internal quotation marks omitted.) *State* v. *Ross*, 269 Conn. 213, 271, 849 A.2d 648 (2004).

[7] Our Supreme Court has recently clarified "that the 'independent inquiry' required by due process whenever an allegation of incompetence has been made is a hearing before the court, not an independent psychiatric evaluation as provided by statute." *State* v. *Ross*, 269 Conn. 213, 272, 849 A.2d 648 (2002).

explicit finding of competence, or more precisely a finding that the defendant had a sufficient present ability to understand the nature of the plea proceedings. Nevertheless, our case law has held that "[a] trial court's scrutiny of the voluntariness and the intelligence of a plea . . . necessarily implies that it has made an inquiry into the defendant's competence to plead." (Citations omitted.) *State* v. *Watson,* supra, 198 Conn. 604.

The defendant maintains that, in light of the evidence and circumstances of which the court was aware, it abused its discretion by failing to order a competency hearing on its own motion. Our case law firmly holds that "[a] defendant who challenges the validity of his guilty plea for lack of an evidentiary inquiry into his competence must make a showing that, at the time of his plea, the court had before it specific factual allegations that, if true, would constitute *substantial evidence* of mental impairment. . . . Substantial evidence is a term of art. Evidence encompasses all information properly before the court, whether it is in the form of testimony or exhibits formally admitted or it is in the form of medical reports or other kinds of reports that have been filed with the court. Evidence is substantial if it raises a reasonable doubt about the defendant's competency . . . ." (Citation omitted; emphasis added; internal quotation marks omitted.) Id., 605.

To establish that the trial court had the requisite substantial evidence to raise a reasonable doubt about his competence, the defendant points to three facts. These facts are (1) his long history of mental illness, (2) his conduct during the plea canvass and (3) his counsel's initial representation to the court that the defendant was incompetent to enter a plea. We are not persuaded that, on this record, the trial court abused its

discretion by failing to conduct a renewed evidentiary inquiry into the defendant's competence.

## A

### Long History of Mental Illness

The defendant first argues that the trial court's awareness of his long history of mental illness and repeated failures to take his prescribed medication constituted substantial evidence of mental impairment. We disagree.

Our point of departure is the accepted principle that "[c]ompetence to stand trial . . . is not defined in terms of mental illness." *State* v. *DeAngelis*, 200 Conn. 224, 230, 511 A.2d 310 (1986). "An accused may be suffering from a mental illness and nonetheless be able to understand the charges against him and to assist in his own defense . . . ." Id. Therefore, the test for determining competence focuses not solely on a historical assessment of mental illness but on "whether [the defendant] has sufficient *present ability* to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." (Emphasis added; internal quotation marks omitted.) *State* v. *Wolff*, 237 Conn. 633, 663, 678 A.2d 1369 (1996); see also *Dusky* v. *United States*, 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960) (per curiam).

Contrary to the defendant's view, we find that the record supported the trial court's implicit finding that the defendant had a sufficient present ability to plead guilty. Although the defendant had been declared incompetent several times in the past, the competency team assigned to evaluate his mental health concluded that he had been restored to competence several weeks prior to the plea hearing. In their report, the competency team concluded that with the aid of medication, he had

"been able to engage in clear and coherent discussions of his legal situation." This finding is consistent with our case law that holds "the fact that [a] defendant was receiving medication and would require medication during the course of the trial does not render him incompetent." *State* v. *DeAngelis*, supra, 200 Conn. 230.

In response, the defendant places significance on the fact that four weeks had passed between his competency hearing and his plea hearing. He has not cited, and we have not found, any case law that establishes a bright line rule as to when a competency report becomes stale.

In our view, the relevant inquiry for a trial court is to determine whether the defendant's condition has materially changed since a previous finding of competence. During the court's canvass, the defendant affirmed that he was taking his medications as directed and was able to understand the proceedings. While the defendant's subjective appraisal of his condition is not dispositive, the court was in the best position to weigh this appraisal in light of the competency team's report and the court's own previous finding of competency issued a month before the plea hearing.[8] See *State* v. *Garcia*, 81 Conn. App. 294, 303, 838 A.2d 1064 (2004) ("[T]he trial judge is in a particularly advantageous position to observe a defendant's conduct during a trial and has a unique opportunity to assess a defendant's competency. A trial court's opinion, therefore, of the competence of a defendant is highly significant." [Internal quotation marks omitted.]).

As a result, as far as the record shows, the trial court reasonably could find that the defendant's past struggles with his mental illness and his former failure to take

---

[8] Indeed, it should be noted that the trial court handled all of the prior proceedings involving the defendant's mental state, thus enhancing its ability to assess the defendant's competency.

his medication did not negate his present willingness to continue his treatment. Therefore, the defendant's history of mental illness did not, by itself, require a new evidentiary inquiry into his competence.

## B

### Conduct During Plea Hearing

The defendant also argues that his behavior and commentary during the plea canvass constituted substantial evidence to raise a reasonable doubt about his competence to plead guilty. Although some of the defendant's comments concededly were strange and irrational, the state argues that, overall, his ultimate answers to all of the court's questions were coherent, comprehensive and exhibited an adequate understanding of the proceedings. We agree with the state.

The first category of statements that the defendant points to relate to his alleged confusion about legal matters. For instance, despite his stated agreement to make an *Alford* plea, he continually proclaimed his innocence of the offenses with which he had been charged. In the defendant's view, these statements indicate his lack of understanding of the plea proceedings.

The defendant, however, overlooks that an *Alford* plea does not require an admission of guilt but rests on a defendant's concession that the state had enough evidence to convict him of the crime with which he was charged. See *North Carolina* v. *Alford*, 400 U.S. 25, 37–38, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). Because there is no inconsistency between claims of innocence and an *Alford* plea, the defendant's protestations did not demonstrate that he did not understand the proceedings in which he was participating.

The defendant also points to other statements made at the plea hearing, which, in his view, demonstrate his misunderstanding of the legal system. Specifically, the

defendant spoke of pursuing an independent civil action or of attempting to get his charges nolled in the future. The record does not substantiate the defendant's claim that any of these statements demonstrated that he failed to understand the present proceedings. It follows that the statements had no bearing on his alleged lack of competence.[9]

In addition to this alleged legal confusion, the defendant points to other allegedly bizarre responses during the court's questioning. For example, during the canvass, in response to the trial court's inquiry into whether his treatment at the local mental health facility was going well, he responded: "Yeah, I am hanging out with them. I'm taking them for advantage because I just hit a telephone pole. Someone ran me off the road a couple of days ago. I got a bunch of stitches in my head, right now, and my knees got stitches."

In his argument to this court, the defendant maintains that this statement should have alerted the trial court to inquire into his competence. Inferentially, the defendant asks us to assume that this motor vehicle incident never occurred. Yet, as the defendant concedes, the record is silent on this issue. We disagree with the defendant's contention that the trial court abused its discretion by failing to consider evidence that was purely speculative.

[9] Specifically, the defendant points to a statement that he made in response to his counsel's advice that any appeal filed after the entering of a guilty plea would be difficult to overturn. The defendant remarked: "I do enough paperwork, I *could* jam [my attorney] up for nine months, and never see a probation officer, and I finally get it nolled." (Emphasis added.) Contrary to the defendant's assertion on appeal, this statement simply indicates a recognition of the wide range of choices available to him prior to engaging in the plea bargaining process and not an intention to pursue this avenue after the hearing.

Moreover, the record is ambiguous as to the defendant's repeated references to his pursuit of a separate civil action. It is not clear whether the "civil case" to which the defendant alluded referred to a complete misunderstanding of the plea proceeding, a pending grievance against his own counsel, or a possible malicious prosecution claim against the state.

Finally, the defendant argues that he provided unresponsive and bizarre answers concerning his use of his prescribed medication. The record indicates to the contrary. Despite some extraneous commentary, the defendant indicated that he had taken his prescribed medication and was able to understand the proceedings.[10]

We conclude, therefore, that the trial court reasonably could find that the defendant's behavior at the plea canvass did not demonstrate mental incompetence. In the absence of substantial evidence of mental impairment, the court did not abuse its discretion by continuing with the plea proceedings without a competency hearing.

## C

### Opinion of Counsel

The defendant's final argument is premised on his contention that his attorney unequivocally informed the

---

[10] The following colloquy occurred between the trial court and the defendant:

"The Court: And are you currently, or presently, under the influence of alcohol, drugs, medication—

"The Defendant: No. Drugs—lot of drugs, they gave me, a lot of pills. I sound like I'm drunk.

\* \* \*

"The Court: . . . I understand because we have been here several times together, almost on a weekly basis, the drugs you are taking . . .

"The Defendant: [T]hey gave me a box drugs about this size.

"The Court: And is it your opinion that any of those drugs that your are currently taking renders you unable to understand what we are doing here today?

"The Defendant: No. I understand what is going on here.

"The Court: You know what is going on?

"The Defendant: You seem to be . . . a pretty good judge, and [I] will accept the plea. And at the most I can do is try to file an appeal, and I'm not gonna, because it's probably not going to happen. I've done it once before, on a three year probation bid and I got away for the whole three years, just [because] I kept doing paper work, and probation didn't want to bother me. This will be all blown over in nine months."

court prior to the plea canvass that the defendant was incompetent to enter a plea. In the defendant's view, despite the fact that his counsel subsequently expressed the opposite view, his initial opinion constituted sufficient evidence of incompetence to require an evidentiary competency hearing. We disagree.

It is undisputed that, prior to the plea canvass, the defendant's counsel informed the court that he had concerns about the defendant's competence to plead guilty. Apparently, counsel feared that the medication that the defendant was taking might impair his understanding of the plea proceedings. The defendant's guardian ad litem, disagreeing with that assessment, thought that the defendant was competent to enter a plea. In light of this difference of opinion, defense counsel proposed that the court should "canvass him, specifically, and . . . ask him about the medications that he is taking, because he has raised an issue with me that he would accept this plea bargain." The court conducted the requested canvass. The defendant affirmed that he had taken his medication but also affirmed his ability to understand the proceedings.

Thereafter, defense counsel raised no further issues about the defendant's competence, despite a further inquiry by the court. Addressing the defendant's claim that he had been coerced into pleading guilty, defense counsel stated: "I believe that this plea is *voluntary on his part, even though I also believe that he suffers from delusions.* I also understand that his guardian ad litem feels that he is competent to enter this plea." (Emphasis added.)[11] In light of this record, the trial court reasonably could find that both the defendant's counsel and

---

[11] Subsequently, the trial court, on the basis of its observations of the defendant with his counsel, found "no issue, with respect to coercion, in that relationship . . . ."

his guardian ad litem ultimately agreed on the defendant's competence.[12]

In sum, in light of all of the circumstances, we conclude that the trial court did not abuse its discretion by failing to conduct a separate evidentiary hearing into the defendant's competence under the circumstances of this case. The defendant did not present specific factual allegations that, if true, would constitute substantial evidence of mental impairment. The court reasonably could find that the defendant's courteous cooperation with the plea proceedings outweighed the irrelevant comments that he interjected on a few occasions.[13] See *State* v. *George B.*, supra, 258 Conn. 787–88. The court reasonably could rely on the defendant's representation that he was taking his prescribed medication and on the competency team's report that, with medication, the defendant was competent to stand trial.

## IV

## ADEQUACY OF PLEA CANVASS

Even if the trial court properly concluded that a separate evidentiary hearing was not warranted, the defen-

---

[12] We do not mean to suggest that the court would have been required to conduct a competency hearing if defense counsel had continued to express doubts about his client's ability to participate in the plea proceedings. See *State* v. *George B.*, supra, 258 Conn. 788. The court necessarily would have to weigh the opinions of defense counsel and of the guardian ad litem in light of its own observations and the report from the competency team.

[13] Perhaps, the most striking example of this interplay occurred prior to the court's canvass:

"The Defendant: I don't plan on getting into any trouble for nine months.

"The Court: Okay. Or at any point after nine months?

"The Defendant: Yeah. I don't look for trouble.

"The Court: Okay. And—

"The Defendant: I'm just trying to build a castle, whoopie-doo.

"The Court: Okay.

"The Defendant: It's got some nice water there, ya know.

"The Court: Okay. And attorney—

"The Defendant: The water is free—"

dant claims that his plea should be set aside because his plea canvass was constitutionally defective. To decide the merits of this claim, we must undertake a plenary examination of the relevant circumstances. See *State* v. *Groppi*, 81 Conn. App. 310, 313, 840 A.2d 42, cert. denied, 268 Conn. 916, 847 A.2d 311 (2004). We are not persuaded by the defendant's claim.

The guidelines that determine the validity of a plea canvass in our system of law are well established. To protect a defendant's constitutional rights to due process, the trial court must ascertain, on the record, that the defendant's guilty plea was made intelligently and voluntarily. See *State* v. *Childree*, 189 Conn. 114, 120, 454 A.2d 1274 (1983). "To ensure compliance with this constitutional mandate, Practice Book [§ 39-19] requires that the trial court address the defendant personally and determine that he fully understands the nature of the charge against him. The court must also advise him of (1) the mandatory minimum sentence, (2) the maximum possible sentence, and (3) the fact that he has the right to plead not guilty, the right to be tried by a jury, the right to confront and cross-examine witnesses, and the right against self-incrimination. The court must also ensure that the plea is voluntary . . . . Practice Book [§ 39-20]." (Internal quotation marks omitted.) *State* v. *Benitez*, 67 Conn. App. 36, 43, 786 A.2d 520 (2001), cert. denied, 259 Conn. 922, 792 A.2d 855 (2002).

The defendant's challenge to the sufficiency of the plea canvass has three parts. Specifically, he argues that the court's canvass did not adequately address (1) his use of medication, (2) his understanding of the state's evidence and the charges against him and (3) his ability to understand the penalties associated with the charged offenses. We are not persuaded.

A

It is undisputed that the defendant participated in the plea canvass at a time when he was taking medication. We have already upheld the trial court's finding that, while medicated, the defendant had the competence to participate in the plea proceedings. Under the circumstances of this case, the defendant's use of medication was a positive factor supporting the defendant's knowing and voluntary agreement to a plea bargain. See *Sherbo* v. *Manson*, 21 Conn. App. 172, 184, 572 A.2d 378, cert. denied, 215 Conn. 808, 809, 576 A.2d 539 (1990) (prescribed medication improved ability to understand plea).

The defendant nonetheless maintains that the court's canvass did not make a sufficient inquiry, on the record, into his current use of alcohol or drugs. Although he asserts that the court failed to elicit any response into whether he was currently using drugs or alcohol, the record does not bear this out. His claim that the court should have inquired more closely into the specific types of medication that he was taking fails to take into account the court's actual knowledge of the drugs prescribed for the defendant.[14] In the absence of an evidentiary representation that the defendant was taking drugs other than his prescribed medication, we cannot fault the plea canvass on this ground.

The defendant also asserts that the trial court did not make a sufficient inquiry about the manner in which he was affected by the prescribed medications that he was taking. The defendant argues that, because of the nature of his extraneous comments at the plea canvass,

---

[14] Not only were the names of the medication contained in the report submitted by the competency team, but the court affirmed this familiarity at the plea canvass when it stated: "I understand because we have been here several times together, almost on a weekly basis, the drugs that you are taking . . . ."

the court should have disregarded his affirmation that he was able to understand the proceedings while under the influence of his prescribed medication. This argument is another version of the defendant's previous claim that these comments cast doubt on the defendant's competence. We have already rejected that claim.

B

The defendant also maintains that the plea canvass was inadequate because it did not manifest his understanding of the state's evidence and of the charges against him. He faults the canvass for failing to contain a sufficient description of the state's evidence, the elements of the offense, and his necessary waiver of his constitutional rights. This is not the usual appellate claim that the court's questions were incomplete or inadequate. Rather, the defendant attempts to raise again his earlier claim that he was incompetent to plead guilty because of his random interjections of innocence and the possible pursuit of a future civil action. We have already decided that that claim is untenable. Indeed, the record demonstrates direct and responsive answers by the defendant in response to the court's questioning.

C

The defendant's final argument is that the plea canvass was defective because he did not fully understand the penalties associated with the crime of breach of the peace in the second degree. We again disagree.

During the court's canvass, the trial court explained to the defendant the terms of the plea agreement. It informed the defendant that the maximum penalty for breach of the peace in the second degree was six months imprisonment.[15] At that point, the defendant

_____

[15] The following colloquy occurred on this matter:

"The Court: [T]he maximum penalty for breach of peace second, would be up to six months in jail and a thousand dollar fine.

"The Defendant: I thought it was—well, there is three different degrees. That would be four months maximum, wouldn't it, on a second degree? [I]t only goes up three degrees, so that would be four months maximum.

asked the court whether it was indeed four months, noting the three different degrees described by law. The court immediately reaffirmed that the sentence was six months imprisonment.

In the defendant's view, this exchange demonstrates his confusion about the penalties associated with his plea, which in turn required the trial court to conduct a more thorough canvass. In light of the court's immediate clarification of the sentence that the defendant might expect, this claim is groundless. The record demonstrates that the court unequivocally informed the defendant of the sentence that he faced if he agreed to the plea agreement.[16]

In sum, we conclude that trial court's plea canvass ensured that the defendant's plea was voluntary, knowing, and intelligent. On the record, the trial court took all the necessary steps that our law requires to ensure that the defendant's constitutional rights were protected.

The judgment is affirmed.

In this opinion the other judges concurred.

---

"The Court: No, no—zero to six months.

"The Defendant: Still six?

"The Court: Yup. A thousand dollar fine and two years probation. Okay? And feel free, attorney Putman [guardian ad litem], and break in if you think it's appropriate."

[16] Indeed, his own counsel described the defendant's extensive involvement in the plea negotiations.